[Crim. No. 16466. In Bank. July 16, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONARD MARTIN PETERSON, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—Defendant appeals from a judgment entered upon his plea of guilty of possession of heroin (Health & Saf. Code, § 11500) after denials of his motions to set aside the information (Pen. Code, § 995)

and to suppress evidence (Pen. Code, § 1538.5).[1] One of five charged prior convictions was found to be true, probation was denied, and defendant was sentenced to the state prison for the term prescribed by law.

Defendant asserts on this limited appeal (fn. 1, *supra*) that police officers failed to comply with the provisions of Penal Code section 1531 in effecting an entry into and conducting a search of defendant's home pursuant to a search warrant.[2] The search disclosed a supply of heroin the admissibility of which defendant unsuccessfully challenged both at the preliminary hearing and by pretrial motions.[3] He now asserts: (1) that the evidence was erroneously received; and (2) that he was deprived of due process because he was denied the right to confront witnesses and to rebut testimony received in support of material in the probation officer's report. We conclude for the reasons which follow that defendant's contentions lack merit.

A warrant was issued on March 23, 1970, authorizing the search of the person of defendant, his residence and two vehicles. During the following week officers kept his home under surveillance but observed no activity at that location. On March 30, however, defendant was seen moving boxes from a vehicle into the residence. Shortly thereafter, accompanied by a female, defendant drove away in a Cadillac automobile,

---

[1]In addition to possession of heroin defendant was also charged with possession of marijuana. (Health & Saf. Code, § 11530.) He initially entered pleas of not guilty to both charges. His pretrial motions were based on the alleged unlawful seizure of the contraband. Following the denial of such motions defendant withdrew his plea of not guilty of possession of heroin and was rearraigned on and pleaded guilty to that charge. The charge of possession of marijuana was dismissed. In his notice of appeal from the judgment defendant asserted that he intended to challenge only the ruling on the motion to suppress evidence (see Pen. Code, § 1538.5, subd. (m); *People* v. *Nickles* (1970) 9 Cal.App.3d 986 [88 Cal.Rptr. 763]) and other matters relating to the probation and sentencing hearing (see *People* v. *Delles* (1968) 69 Cal.2d 906 [73 Cal.Rptr. 389, 447 P.2d 629]; *People* v. *Ward* (1967) 66 Cal.2d 571 [58 Cal. Rptr. 313, 426 P.2d 881]). The validity of the guilty plea is not challenged. The cited authorities hold that notwithstanding the provisions of Penal Code section 1237.5 an appeal lies on the limited grounds asserted by defendant from a judgment upon a guilty plea.

[2]Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Unless otherwise indicated, all statutory references are to sections of the Penal Code.

[3]Defendant also sought to foreclose the receipt of such evidence by writ of prohibition. (§ 1538.5, subd. (i).) The application was summarily denied by minute order without opinion by the Court of Appeal. (Peterson v. Superior Court, 2 Civ. 37023, Aug. 12, 1970.) As such summary denial was not a conclusive determination of the validity of the challenged search and seizure, further review of that issue is not precluded on this appeal from the ensuing judgment. (*People* v. *Medina* (1972) 6 Cal.3d 484, 493 [99 Cal.Rptr. 630, 492 P.2d 686].)

one of the vehicles described in the warrant, and was taken into custody when he stopped at a parking lot.[4]

Immediately after defendant's apprehension the arresting officers proceeded to defendant's residence. According to Officer Keith Kalm, whose testimony at the hearing on the motion to suppress was expressly found to be true by the court, the officers stopped at the entrance to defendant's home. An inner door was open and Officer Kalm was able to see through a closed but unlatched screen door into the living area where in plain view he observed a man and a woman seated and engaged in conversation.

The officer testified that while he was standing at the doorway he knocked several times but neither party within the dwelling responded. After waiting approximately one minute he opened the screen door, stood at the threshold, identified himself and, after stating he had a warrant for a search of the premises, entered.[5]

Approximately three minutes after the officer's entry, defendant, together with several of the officers who earlier had been present when he was apprehended, entered the residence and defendant announced to the occupants thereof that the officers, having a warrant, should be allowed to conduct a search. He then accompanied the officers to a rear bedroom,

---

[4]Defendant does not attack the validity of the search warrant other than to contend that the affidavit in support thereof does not justify the authorization for search of the vehicles. The record fails to disclose that searches of the vehicles, if such were made, produced any evidence. The warrant, therefore, is deemed to constitute proper authorization for the search which disclosed the challenged evidence.

No issue is raised which requires that we determine the legality of defendant's arrest. (See fn. 6, *infra.*)

[5]The record reflects conflicting testimony as to the precise sequence of events at the time of the entry. Officer Hever King, who accompanied Officer Kalm to the residence, testified as follows:

"THE WITNESS: I followed Sergeant Kalm in. He knocked at the door and waited a short time, and entered. I don't know what was said inside.

"THE COURT: Did you follow—did you follow Officer Kalm, directly behind him?

"THE WITNESS: Yes.

"THE COURT: Did you hear what he said to the occupants?

"THE WITNESS: He stated, 'Police Officer. Open the door for a search,' I believe.

"THE COURT: Did he say that before, or after opening the door?

"THE WITNESS: Before he opened the door."

Defense witnesses testified that the officers had made an entry into the residence before announcing themselves or their purpose.

The court, in ruling on the motion after reviewing the testimony relative to the sequence of events at the time of entry, stated: "I interpret [Officer Kalm's statement relative to the announcement of his purpose] to be that this was done before they crossed the threshold, and I find that to be a fact. It seems to me that the purposes of 1531 . . . were fully served by the manner in which the officers approached their duty in making a search of the premises."

pointed to some white powder on the top of a dresser and stated: "That is all the smack there is. You won't find any more." Later analysis disclosed that the substance was heroin. An additional small amount of heroin was found in one of the dresser drawers and marijuana was discovered concealed in a nearby bed. Defendant thereafter led the officers to a bathroom where he disclosed the location of his "outfit" for injecting narcotics.

Although defense witnesses' accounts of the officers' entry differed from that of the officers in material respects, the trial court was justified in accepting as true the account of Officer Kalm, and we are bound thereby. (See *People* v. *Sweeney* (1960) 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].)

The thrust of defendant's attack is a claimed lack of strict compliance with the procedural sequences set forth in section 1531. ■ The officers were required to comply with that statute although the doorway was barred only by an unlocked, transparent screen door.[6] (See *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129].)

■■■ In *Greven* v. *Superior Court* (1969) 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432], relied on by defendant, we reviewed those cases dealing with "substantial compliance" which, although short of an exact compliance with all of the strictures of the announcement portion of the statute, nevertheless were deemed to satisfy the mandate of section 1531. In that case and the cases there reviewed we particularly inquired as to whether there had been compliance with the requirements of both notice of the officer's authority and of his purpose in demanding entry.[7] Here, it clearly appears, the officers gave both portions of such notice.

---

[6] The propriety of the execution of the search warrant is essential to establishing the admissibility of the evidence upon which the People's case rests. (See *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 290-291 [78 Cal.Rptr. 504, 455 P.2d 432].) The People contend, alternatively, that the seizure of the contraband was proper for the reason that defendant consented to the search. Defendant contends that such consent was vitiated because it was given only as the result of an unlawful arrest. (See *People* v. *Robinson* (1957) 149 Cal.App.2d 282, 286-287 [308 P.2d 461].) We note in this connnection that the court expressly found that the consent was given under duress but we do not deem it necessary to reach the issue in view of our conclusion that the evidence was properly seized pursuant to the due execution of the search warrant.

[7] *Greven* and some of the other cases cited herein deal with an entry made pursuant to section 844 (entry by breaking for purpose of making an arrest) rather than section 1531. The two sections are governed by similar principles of law and for many purposes the cases applying one or the other of the statutes may be interchangeably cited. (See *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292, fn. 6.)

But in this case we are presented with' a further question. The officers committed a technical breaking by opening the unlatched screen door before such notice was given. We must resolve whether failure to comply strictly with the step-by-step direction of the statute can be deemed to constitute substantial compliance.

We noted in *Duke* v. *Superior Court* (1969) 1 Cal.3d 314 [82 Cal. Rptr. 348, 461 P.2d 628], that statutes requiring announcement serve the following purposes and policies: "(1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder." (*Id.* at p. 321; see also *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292-293.) When police procedures fail to conform to the precise demands of the statute but nevertheless serve its policies we have deemed that there has been such substantial compliance that technical and, in the particular circumstances, insignificant defaults may be ignored.

It must be recognized in the instant case that had Officer Kalm made his announcement at the time of knocking and before pulling open the screen door, section 1531 would have been fully satisfied had he been refused admittance or had there been an unreasonable delay by the parties within in responding to the demand.[8]

■ The question then is whether Officer Kalm by delaying his announcement until after he had opened the screen door frustrated or made nugatory any of the purposes and policies previously enumerated. We note that the interior of the residence and the occupants therein were visible to any member of the public who, like the officers, had proper reason to enter onto the premises and approach the visibly open doorway. Thus, no right of privacy was infringed as the opening of the screen door revealed nothing more than was already exposed to the officers' view and they did not physically intrude into the home until after the announcement.

It is equally clear that no greater risk of violence to any person on the

---

[8]The statute requires that before a breaking and entering an officer must be refused admittance. As previously set forth, Officer Kalm testified that he knocked several times, waited approximately one minute during which interval he observed two persons seated only a short distance inside the screen door. They gave no indication that they intended to respond. Such a delay with notice of the officer's presence, would reasonably constitute a rejection of the officer's demands. (Cf. *People* v. *Benjamin* (1969) 71 Cal.2d 296, 298 [78 Cal.Rptr. 510, 455 P.2d 438].)

premises was created, as at all times after approaching and knocking the officers could clearly observe the occupants within the interior and take precautionary measures if necessary. Nor can it be argued successfully that there was a greater risk that the occupants might respond violently by reason of ignorance of the officers' identity and purpose, as the officers were immediately visible and announced their purpose to the occupants who were thus made aware of the situation and its demands. Assuredly the personal safety of the officers, as in the case of the occupants, was not subjected to any increased danger.[9] We conclude that in the particular circumstances of this case there was substantial compliance with section 1531, and that there also has been compliance with the purposes and policies set forth in *Duke* v. *Superior Court, supra,* 1 Cal.3d 314 and *Greven* v. *Superior Court, supra,* 71 Cal.2d 287. Accordingly, the contraband found in defendant's residence was lawfully seized and the trial court properly denied defendant's motion under section 1538.5.

We next address ourselves to defendant's second contention, that he had been denied due process of law because of procedural defects at the hearing upon his application for a grant of probation. At the outset of the hearing the trial court stated: "I was interested in hearing from Sergeant Ingels. It is stated in the probation report that Sergeant Ingels is reported by the probation officer to have said that the defendant was a big dealer in heroin, selling probably two or three ounces a day. I would like to find out about that as to whether or not Sergeant Ingels has been accurately quoted and what information he has on the subject. [¶] If he is available, I would like to hear from him." It was this comment which triggered lengthy proceedings with numerous witnesses being called on behalf of both the People and the defendant. At the conclusion thereof probation was denied and the state prison sentence imposed.

The sergeant referred to by the trial court, Carlyle Ingels, was called as a witness and testified in part as follows: that only four days before the probation hearing a man named Richard M. Thompson was arrested while leaving defendant's residence; that Thompson appeared to be suffering from narcosis and stated he had made regular purchases of heroin from defendant over a two- or three-month period; that shortly before defendant's arrest on the instant charges, approximately a year before

---

[9]The court, in ruling on the motion, made findings consistent with our conclusions herein when it stated: "There was no brash intrusion upon the privacy of the woman in the house or of [her guest], as I see it. Had the officers waited, before opening the door, until the lady could come to the door to open it, it would have made the experience no less tolerable for her, and I think the officers possibly had some anxiety about a confrontation. The means they employed, in their judgment, was best designed to avoid danger to themselves, or to the occupants."

the hearing, Ingels witnessed the sale of what he termed a commercial quantity of heroin (one-quarter ounce) by defendant to a confidential informant; and that the confidential informant and other untested informants had reported to Ingels that defendant was a "big dealer" in heroin. The substance of the foregoing testimony must be deemed to have significant bearing on the question of the denial of defendant's application for probation, especially in light of the trial court's attitude expressed in open court on several occasions that if defendant was a commercial dealer, probation would be denied.

Defendant makes several complaints of denial of due process. Such complaints relate to procedural rulings which, according to defendant, frustrated his efforts to rebut effectively Ingels' testimony.[10]

■ Once guilt has been determined, evidence which would be inadmissible on the issue of guilt may nevertheless be received as bearing on the punishment to be imposed. (*Williams* v. *New York* (1949) 337 U.S. 241 [93 L.Ed. 1337, 69 S.Ct. 1079].) In *Williams* the Supreme Court rejected claims that a convicted man was deprived of due process by procedural practices wherein the sentencing judge relied on information not obtained through formal proceedings from persons whom the defendant had not been permitted to confront or cross-examine. In so concluding the court distinguished evidentiary procedural limitations applicable to the guilt-determining processes from those applicable to hearings relating to the fixing of punishment after a determination of guilt has been made, and noted the existence of a policy predating the Constitution whereby a sentencing judge "could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." (*Id.* at p. 246 [93 L.Ed. at p. 1341].)

Although the court in *Williams* did not have a question directly in-

---

[10]Defendant asserts in his petition for hearing: "Petitioner contends that he was denied due process because he was deprived of his ability to confront and rebut the testimony of Sergeant Ingels that petitioner was a commercial dealer for each of the following reasons: [refusal of the trial court to order a removal of Thompson from the county jail and to grant a continuance in that connection and to order a disclosure of the identities of confidential informants].

"The essence of petitioner's position is that he had a due process right to a fair opportunity to rebut the hearsay accusations of the informants to which Sergeant Ingels referred. Yet with the exception of Thompson, the officer refused to identify who these informants were. Petitioner contends that the right to rebut was meaningless in this case because unless you know who the informants are, there is no ability to rebut the charges, and there is certainly no ability to confront and cross-examine these informants if their identity is not known."

volving probationary procedures before it, it nevertheless expressly embraced such within its holding. It noted that probationary procedures were designed to return as quickly as feasible convicted offenders to complete freedom and useful citizenship and that this generally called for an increase in discretionary powers in fixing punishments. The court concluded that the "due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would' hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice." (*Id.* at p. 251 [93 L.Ed. at p. 1344].) *Williams* continues to reflect the view of the Supreme Court. (*United States* v. *Tucker* (1972) 404 U.S. 443, 446-447 [30 L.Ed.2d 592, 595-596, 92 S.Ct. 589]; see also *Williams* v. *Oklahoma* (1959) 358 U.S. 576, 584 [3 L.Ed.2d 516, 521-522, 79 S.Ct. 421].)

We do not, however, deem *Williams* to hold that there are no limitations on the receipt or exclusion of evidence bearing on the question of a denial or grant of probation. ■ While *Williams* does not require the same procedural safeguards at probation hearings as in the case of a trial on the issue of guilt, an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are fundamentally unfair. Defendant contends that in the instant case the proceedings were fundamentally unfair and accordingly deprived him of due process of law.

Defendant relies particularly on *United States* v. *Weston* (9th Cir. 1971) 448 F.2d 626, wherein the defendant was convicted of transportation of heroin. The district court judge, who under the federal statute could impose a sentence with a minimum term of five and a maximum term of twenty years, first indicated that the minimum term was appropriate but, after a presentencing report was considered, imposed the maximum term. On appeal, the sentence was vacated and the case returned to the district court for redetermination.

The Court of Appeal in *Weston* noted on the one hand the existence of significant safeguards which had been designed to protect the defendant in the guilt-determining process and, on the other hand, the lack of integrity of the information in the particular sentencing process which resulted in severely increased punishment. The court expressly recognized the continuing vitality of *Williams* and stated that it "is still good law," citing *McGautha* v. *California* (1971) 402 U.S. 183, 217 [28 L.Ed.2d 711, 732, 91 S.Ct. 1454]. It distinguished *Williams,* however, on the ground that the defendant in that case, unlike the defendant then before

the court, appeared to concede the accuracy of the matters appearing in the presentencing report. Further, *Williams* basically dealt with the *nature of the proceedings* rather than the *integrity of the information* which the sentencing judge may consider. Conceding that a judge may consider other criminal conduct even if uncharged, the court held that nevertheless there must be some substantial basis for believing that such information is reliable, stating that a "rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process" (448 F.2d at p. 634). We conclude for the reasons which follow that in the case before this court the reliability of the information related by Ingels at the probation hearing is sufficiently demonstrated.

Defendant challenged Ingels' testimony relative to the arrest of Thompson which occurred some four days prior to the date of the hearing as he was leaving defendant's residence under the influence of narcotics and also Ingels' testimony concerning the statement made by Thompson that he had been making regular purchases of contraband from defendant. Defendant elicited testimony in rebuttal to the effect that Thompson, who was then in custody but could not be immediately produced as a witness, had denied purchasing heroin from defendant and had further stated that previously Ingels offered Thompson his freedom if he would support the officer's testimony which he would present at the time of defendant's probation hearing. Defendant unsuccessfully sought an order for the removal of Thompson from the county jail to appear as a witness and for a continuance of sufficient duration to allow defendant to arrange for Thompson's appearance and to subpoena officers other than Ingels who were present at the time of Thompson's arrest.

It appears that, in view of all the circumstances including the ready availability of Thompson, the court well might have compelled his attendance as a witness. However, its failure to do so cannot be deemed to have resulted in any fundamental unfairness to defendant. Although Thompson was not heard from directly the substance of those matters to which he would testify, if called, was otherwise received in evidence. Defense counsel's secretary appeared as a witness and testified that she took shorthand notes of an interview of Thompson conducted by defense counsel at the county jail. She then read her transcript of the interview in open court. It appeared therefrom that Thompson stated that Ingels arrested him without probable cause at a time when he was in the neighborhood of defendant's home; that Ingels sought to induce Thompson to falsely inform on defendant; that Ingels threatened to perjure himself at Thompson's trial if Thompson refused to inform on defendant; that Thomp-

son had made no purchases of narcotics from defendant within the last six months; and that Ingels stated that he wanted to see defendant in prison.

The People did not object to the receipt of the secretary's testimony and Thompson's verbatim statements were received without being discounted through cross-examination or impeachment of Thompson.

In addition to the indirect receipt of Thompson's testimony the court also heard extensive testimony which otherwise contradicted that given by Ingels and which included testimony of defendant, members of his family and associates.

 It is clear on the record that the court could reasonably conclude that if granted a continuance for the purpose of producing Thompson in court the evidence presented would be merely cumulative on issues as to which defendant had already been given an ample opportunity to submit proof and would only further delay final disposition of a matter which had been before the superior court for over nine months.[11] It is further clear from the record that the court carefully considered and weighed the conflicting evidence and made findings, as it had the right to do, consistent with the officer's testimony. There was a substantial basis for believing Ingels' account and, unlike the process utilized in *Weston,* the record here demonstrates a proper concern for the accuracy of the informational inputs notwithstanding the absence of Thompson's direct testimony. The record discloses no fundamental unfairness insofar as the Thompson matter is concerned.

 We next address ourselves to a further contention of defendant of denial of due process based upon other claimed procedural defects at the probation hearing. Those relate to Ingels' testimony as to the sale of the commercial quantity of heroin by defendant to a confidential informant and the reports that defendant was a "big dealer" in heroin. Defendant contends that the denial of a motion for disclosure of the identity of the confidential informant or informants is a deprivation of due process.

Although there is some confusion in the record with regard to the role or roles played by the confidential informant or informants, it appears that defendant sought disclosure at the probation hearing of but one confidential informant who on prior occasions had furnished information resulting in a conviction or convictions. Ingels testified that there was but one such informant. Defense counsel twice sought to compel the disclosure of the

---

[11]In this connection we note that the information was filed on April 28, 1970, and that defendant entered his plea of guilty on October 19, 1970, approximately three and one-half months prior to the date of the probation hearing.

identity of an informant, but on each occasion it appears that the identity sought was that of the particular undercover informant referred to in Ingels' testimony as the individual whose purchase of heroin from defendant had been witnessed by the officer.

Following Ingels' refusal to disclose to defense counsel the identity of the informant who had made the undercover purchase of heroin, the court held an in camera hearing excluding defendant and his counsel therefrom. (See Evid. Code, § 1042, subd. (d).) The court thereafter denied defendant's motion to compel the disclosure of the informant's identity.[12] Ingels then testified to the specific sale of the claimed commercial quantity of heroin, stating that the informant, after a skin search, was observed as he met and touched hands with defendant and returned to Ingels and Kalm with a quarter ounce of heroin.

Although the identity of the informant was not disclosed, defendant nevertheless on direct examination identified the individual who, he claimed, was the informant. Defendant attempted to impeach such person by testifying that the claimed informant bore a grudge against him and that the two of them had engaged in an altercation rather than in a narcotics transaction at the meeting witnessed by Ingels and referred to in his testimony.

There is, as in the Thompson matter, substantial reason for believing that the communications received from the informant were accurate and reliable. The undercover purchase was witnessed by Ingels and other officers. Such observation was one of the bases upon which the unchallenged warrant (see fn. 4, *supra*) authorizing the search of defendant, his residence and vehicles was issued. The observation together with the commercial quantity of heroin returned by the informant to the officers, although relating to a single transaction, nevertheless provided support for the informant's statement that defendant was a "big dealer" in heroin. There is, additionally, other independent evidence of defendant's commercial activity in contraband. Foremost, of course, is the evidence of

---

[12]Evidence Code section 1042, subdivision (d), deals with the disclosure of an informant who may be a material witness "on the issue of guilt." We do not purport herein to reach the issue whether disclosure of the informant's name can be compelled for probation and sentencing purposes. (See *Honore* v. *Superior Court* (1969) 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169].) The sentencing judge, in response to the prosecutor's argument that defendant was not entitled to a disclosure as the informant was not a material witness on the issue of guilt, nevertheless utilized the in camera procedures out of what the judge deemed to be fairness to the defendant: "I do this for the purpose of protecting the right of the defendant in connection with this particular matter. That was my only reason for such a procedure in camera. Otherwise, I would not have required the disclosure of the informant."

the Thompson transaction previously discussed and his statement that he had made regular purchases over a three- or four-month period.

In support of the trial court's denial of a grant of probation, we note that it also appears that defendant had an extensive history of criminal activity and had once been rejected as unfit for commitment to the California Rehabilitation Center. At the time of his arrest he had on his person a large sum of money, the possession of which defendant, his wife and mother attempted to explain. The trial court rejected such explanations as being patently unbelievable. Further defendant maintained a loaded gun at the door of the residence where the heroin was found and, again, his attempts to explain such possession were nothing short of incredible. He admitted at the probation hearing that following his arrest he had continued to use heroin for several months and that, only a short time before the hearing, he had made illegal purchases of methadone in substantial quantities.

The court afforded defendant a lengthy and full hearing, patiently heard defendant's numerous witnesses, considered his extensive arguments and carefully weighed such matters in resolving issues consistent with creditable information before it. We therefore conclude that the purported procedural defects of which defendant complains did not infringe any due process or other federal constitutional protections as delineated in *Williams* and *Weston,* nor was there any denial of parallel rights guaranteed under article I, section 19, or other provisions of the California Constitution.

The judgment is affirmed.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.