[Crim. No. 14884. Fourth Dist., Div. Two. Dec. 29, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE MARTIN ZIKORUS, Defendant and Appellant.

**COUNSEL**

James F. Spagnole, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Keith I. Motley and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KENNEDY, J.*—Defendant pleaded guilty in the Riverside Municipal Court to two violations of Penal Code section 288, subdivision (a), (lewd and lascivious conduct with a child). The offenses occurred on September 13, 1982, and October 4, 1982. His case was certified to the superior court and he was sentenced to prison on February 24, 1983. Defendant challenges the procedures employed at his sentencing.

---

*Assigned by the Chairperson of the Judicial Council.

The offenses were both committed on a 12-year-old female victim who was 13 by the time of sentencing. Due to the nature of the offense, the sentencing proceedings were conducted in chambers with defendant's express consent. Present were the defendant, his attorney, the district attorney, the victim and her mother. The proceedings were reported. In imposing sentence, the written material considered by the court included the original probation report, defense counsel's "Statement of Facts in Mitigation and for Probation," a probation memorandum containing information from the defendant's mother and from his common law wife, three character letters from friends of the defendant, a supplemental probation report, and a report by Dr. Harvey Oshrin regarding his psychiatric evaluation of the defendant.

Oral information was presented in chambers and was considered by the court, but oaths were not administered. In inviting participation from the victim and her mother, the court stated it felt compelled by law and by a concern for the victim's emotional or mental trauma. The victim said nothing, but she nodded in the affirmative when the court inquired whether she was receiving counseling or psychotherapy. The victim's mother commented to the court regarding the defendant's relationship with his family, his family's lack of dependence on the defendant for financial support, his drug usage, and her opinion that the defendant's employer was a poor character reference.

Defendant contends:

1. Allowing the district attorney and the victim's mother to comment violated Penal Code section 1191.1.

2. The conduct of the district attorney and the victim's mother violated his due process rights.

3. He was denied effective assistance of counsel by his attorney's failure to request either a continuance or an opportunity to cross-examine the mother.

*I. Penal Code section 1191.1*[1]

Section 1191.1 was enacted on June 8, 1982, as part of an initiative measure entitled "The Victims' Bill of Rights." It was enumerated section

---

[1]Section 1191.1: "The victim of any crime, or the next of kin of the victim if the victim has died, has the right to attend all sentencing proceedings under this chapter and shall be given adequate notice by the probation officer of all sentencing proceedings concerning the person who committed the crime.

"The victim or next of kin has the right to appear, personally or by counsel, at the

6 of Proposition 8. ■ Proposition 8 applies only to crimes committed after June 9, 1982, its effective date. (*People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].) The crimes to which defendant pleaded guilty took place in September and October of 1982. Consequently, Proposition 8 (§ 1191.1) applies. As there are no reported cases dealing with Penal Code section 1191.1, its application here poses a case of first impression.

■ Defendant contends that Penal Code section 1191.1 imposes a limitation on whose views may be considered by the sentencing court. In defendant's opinion, section 1191.1 precludes the court from considering information except from the victim. Accordingly, he contends, the court erred in allowing the mother to speak. Such a construction, in our view, is unnecessary, unwise, and illogical.

Penal Code section 1191.1, on its face, creates certain statutory rights for victims of crime:

(1) The right to attend sentencing proceedings,

(2) The right to notice from the probation officer of all sentencing proceedings, and

(3) The right "to reasonably express his or her views concerning the crime, the person responsible, and the need for restitution."

The section also imposes two duties upon the sentencing court:

(1) The duty to consider the statements of the victim, and

(2) The duty to state whether the defendant "would pose a threat to public safety if granted probation."

In determining whether the statute was intended to eliminate existing sentencing procedures and to create new ones, we are mindful of well-established principles of statutory construction. ■ The court should ascer-

---

sentencing proceeding and to reasonably express his or her views concerning the crime, the person responsible, and the need for restitution. The court in imposing sentence shall consider the statements of victims and next of kin made pursuant to this section and shall state on the record its conclusion concerning whether the person would pose a threat to public safety if granted probation.

"The provisions of this section shall not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors."

tain the intent of the Legislature (or, as here, the voters) so as to effectuate the purpose of the law. (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30 [127 Cal.Rptr. 122, 544 P.2d 1322].) ■ It is the duty of the courts to interpret statutes so as to make them workable and reasonable. (*Regents of University of California* v. *Superior Court* (1970) 3 Cal.3d 529 [91 Cal.Rptr. 57, 476 P.2d 457].) ■ When a statute is susceptible of different constructions, one leading to absurdity and the other consistent with justice and common sense, the latter will be adopted. (*Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440 [136 Cal.Rptr. 67].)

■ Unless expressly provided, statutes should not be interpreted to alter the common law, and should be construed so as to avoid conflict with common law rules. (*Saala* v. *McFarland* (1965) 63 Cal.2d 124 [45 Cal.Rptr. 144, 403 P.2d 400]; *Dry Creek Valley Assn.* v. *Board of Supervisors* (1977) 67 Cal.App.3d 839 [135 Cal.Rptr. 726].) A statute will be construed in light of common law decisions, unless its language " 'clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning a particular subject matter . . . .' [Citations.]" (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 815 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) There is a presumption that a statute does not, by implication, repeal the common law. (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160 [74 P.2d 252].) Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449].)

■ The history of the statute, legislative debates, committee reports, or statements to the voters in the case of initiative and referendum measures, may also be considered in ascertaining legislative intent. (*Noroian* v. *Department of Administration* (1970) 11 Cal.App.3d 651, 655 [89 Cal.Rptr. 889].) To ascertain the intent of the electorate it is proper to consider the official statements made to the voters in connection with propositions of law they are requested to approve or reject. (*Diamond International Corp.* v. *Boas* (1979) 92 Cal.App.3d 1015, 1034 [155 Cal.Rptr. 616].)

■ With these principles in mind, we turn to our analysis of Penal Code section 1191.1. Penal Code section 1191.1 was adopted as part of an initiative measure, Proposition 8, by the voters of California on June 8, 1982. Proposition 8 was entitled "The Victims' Bill of Rights."[2] It is clear that the main thrust of the statute was to expand the rights of victims, not to restrict the scope of judicial inquiry into sentencing alternatives. In the

---

[2]Proposition 8, section 1.

analysis by the Legislative Analyst which was distributed in the ballot pamphlets to all voters, the voters were told (at p. 55):

"Under existing law, statements of victims or next of kin are requested for various reports which are submitted to the court. In many cases, parole boards are not required to notify victims or next of kin about hearings.

"This measure would require that the victims of any crimes, or the next of kin of the victims if the victims have died, be notified of (1) the sentencing hearing and (2) any parole hearing (if they so request) involving persons sentenced to state prison or the Youth Authority. During the hearings, the victim, next of kin, or his or her attorney would have the right to make statements to the court or hearing board. In addition, this measure would require the court or hearing board to state whether the convicted person would pose a threat to public safety if he or she were released on probation or parole."

From the foregoing, it is clear that the Legislative Analyst did not expect that section 6 would restrict a sentencing court to considering only the statements of the victim in imposing judgment.

In all of the public dialogue prior to the passage of Proposition 8, it was never contended that the measure was intended to *reduce* the class of people entitled to be heard at sentencing. Prior to the enactment of Proposition 8, judges had the power to listen to victims, but had no duty to do so. The clear purpose of Proposition 8, as declared by its title (The Victims' Bill of Rights) was to mandate a previously optional procedure; to *require* the judge to listen to and consider the views of the victim. We find nothing in that mandate which is inconsistent with preexisting law which requires a sentencing judge to consider *all* relevant facts, not just those presented by the victim. (See *People* v. *Betterton* (1979) 93 Cal.App.3d 406 [155 Cal.Rptr. 537].) Penal Code section 1203, subdivision (b) requires "In every case in which a person is convicted of a felony and is eligible for probation, before judgment is pronounced, the court shall immediately refer the matter to the probation officer to investigate and report to the court, at a specified time, upon the circumstances surrounding the crime and the prior history and record of the person . . . ." A sentencing court may consider all reliable information " 'relative to the circumstances of the crime and to the convicted person's life and characteristics.' " (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 754 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171].)

Among the factors considered by the court below were a psychiatric report submitted by the defendant, defense counsel's statement in mitigation, and several letters of recommendation submitted by friends and employers

of the defendant. If we were to adopt defendant's contention that section 1191.1 limits the information a court may consider to statements of the victim, none of the materials submitted on defendant's behalf could have been considered by the sentencing court. Such an interpretation would lead to a grave question whether section 1191.1 violates "fundamental fairness" to the defendant as mandated by the due process clause of the United States Constitution. (See *People v. Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187].)

We therefore conclude that Penal Code section 1191.1 was not intended to change common law and limit information a sentencing court may consider in imposing judgment. It simply guarantees to the victim a right to be heard and considered.

■ The Attorney General contends that the trial court was mandated to hear the mother by Penal Code section 1191.1. His view is that the victim's rights under section 1191.1 can be delegated to a friend or relative. We specifically reject that view. First, the statute does not permit it. Second, we can foresee the unreasonable and unnecessary consumption of time if the court is *mandated* to hear lay advocates. The statute does permit the victim's counsel to be heard. It permits the victim to be heard. The court has the discretionary power to hear and consider additional witnesses if appropriate. In the present case the court exercised its discretion and heard the mother, but nothing in the statute compelled the court to consider her comments. This opinion should neither be construed to limit the exercise of such discretion nor to make mandatory what is presently permissible.

## II. Due Process

Given that the court could properly hear from the victim's mother, our next question is whether the procedures used violated due process. ■ Specifically, defendant asserts impropriety in taking testimony without benefit of an oath and without an opportunity for cross-examination.

In analyzing the procedural issues it should be kept in mind that we are here dealing with a sentencing hearing following a plea of guilty. The guiding principles would be quite different if we were dealing with a revocation of probation or parole. Once probation has been granted, a conditional right has been conferred. That right may only be taken away following a hearing at which the defendant is entitled to a broad range of procedural and substantive protections. (See *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]; *People v. Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313].) The due process issues are much different when the guilt of a defendant has been properly established, and all that is

left is for the court to select an appropriate sentence. (See *Williams* v. *Oklahoma* (1958) 358 U.S. 576 [3 L.Ed.2d 516, 79 S.Ct. 421]; *Goodlow* v. *Superior Court* (1980) 101 Cal.App.3d 969, 974 [162 Cal.Rptr. 121].)

The procedural environment in which sentencing occurs may be informal. ▮ "A sentencing judge 'may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.'" (*People* v. *Arbuckle, supra,* 22 Cal.3d at p. 754.) "[F]undamental fairness does not require that [defendant] be allowed to challenge such statements by cross-examining the personnel who prepared the report . . . ." (*Arbuckle, supra,* at p. 755 (dealing with whether the defendant had a right to subpoena personnel of the Department of Corrections who prepared reports under Pen. Code, § 1203.03).) Even though confrontation and cross-examination are not necessary at sentencing, due process does require hearing procedures that are fundamentally fair. (*People* v. *Peterson, supra,* 9 Cal.3d at p. 726.) In *Peterson,* it was sufficient that "The court afforded defendant a lengthy and full hearing, patiently heard defendant's numerous witnesses, considered his extensive arguments and carefully weighed such matters in resolving issues consistent with creditable information before it." (*Id.,* at p. 730.)

Existing law permits the sentencing judge to consider statements without confrontation and without cross-examination.[3] ▮ In the present case, the victim's mother *was* present; confrontation was provided. Her comments were relevant to the crime and to the defendant's life and circumstances and were therefore a proper subject of consideration by the court. (See *People* v. *Arbuckle, supra,* 22 Cal.3d 749.) Defendant's attorney did not seek to cross-examine the mother. The record does disclose, however, that on one occasion when counsel objected to the relevance of a statement made by the mother, the objection was sustained by the court and the evidence was stricken.

Defendant also objects that the mother's statements were not given under oath. Under Penal Code section 1203, subdivision (b), the probation officer is required to ". . . make a written report to the court of his or her findings and recommendations . . ." resulting from an investigation into "the circumstances surrounding the crime and the prior history and record of the

---

[3]Two important caveats should be noted. The court may not consider ex parte information submitted by the prosecution. (*In re Calhoun* (1976) 17 Cal.3d 75 [130 Cal.Rptr. 139, 549 P.2d 1235].) Evidence offered in aggravation or mitigation of a state prison sentence must comply with Penal Code, section 1204. (See *People* v. *Morris* (1971) 20 Cal.App.3d 659 [97 Cal.Rptr. 817], disapproved on other grounds in *People* v. *Duran* (1976) 16 Cal.3d 282, 292 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1].)

[defendant] . . . ." (Pen. Code, § 1203, subd. (b).) "A probation officer could not make an investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. It is clear that Penal Code, section 1203, contemplates the inclusion of hearsay matter in the probation officer's report." (*People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832].)

There seems no logical reason why, if hearsay in a probation report can be considered, it cannot be considered if given in person in court. Surely the mere fact of being contained in a probation report puts no imprimatur of reliability on the information. Here, the defendant received the benefit of hearsay from his employer, his mother, his common law wife, his character references, and a psychiatrist. In these days of high-volume judicial business, it would simply be impossible to require all sentencing input to be made in person, in court, under oath and subject to cross-examination. The court properly received and considered statements from the victim's mother.

### III. Effective Assistance of Counsel

Defendant claims his attorney made two mistakes at sentencing: (1) he failed to request a continuance and (2) he failed to cross-examine the victim's mother. Appellate counsel has totally failed to demonstrate how a continuance would have helped. The burden is on defendant to show that his counsel was incompetent and that that incompetence deprived him of a possible meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) All of the exhaustive sentencing information which trial counsel had compiled and submitted was properly and effectively brought to the attention of the court. The fact that the court struck the sentencing balance against his client does not detract from the quality or quantity of defense counsel's efforts.

Defendant's attorney elected not to cross-examine the victim's mother. There were three ways to attempt to neutralize her statements: (1) present information to demonstrate her bias, (2) ask the court to strike irrelevant portions of her testimony and (3) cross-examine her. Counsel presented abundant material to the sentencing court to show the mother's bias. When appropriate, counsel moved the court to exclude portions of the mother's statements. The motion was granted. As to the third possibility, it is apparent from our reading of the transcript that the victim's mother, if given the opportunity, was prepared to inundate the court with material harmful to

the defendant. Counsel made a tactical decision not to take her head on; at page 13 of the transcript, he said in reference to the mother "I don't want certainly or desire to get into any sort of mud slinging contest. I don't think that is appropriate in this case." Perhaps the most important reason counsel avoided cross-examination is that it would have done more harm than good. "A defendant is entitled only to a fair trial with competent representation. Counsel, in order to appear competent, need not indulge in idle acts." (*People* v. *Wallin* (1981) 124 Cal.App.3d 479, 484 [177 Cal.Rptr. 303].) Our review of the record fails to show incompetent representation by counsel.

The judgment is affirmed.

Morris, P. J., and Rickles, J., concurred.