Filed 1/26/16

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H040765 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC235364) |
| v. | |
| FRANCISCO VELASQUEZ GARCIA, | |
| Defendant and Appellant. | |


Defendant Francisco Velasquez Garcia appeals from the superior court's order denying his petition for resentencing under Penal Code section 1170.126.[1] Although defendant was "eligible" for resentencing, the superior court exercised its discretion under section 1170.126 to refuse to resentence him because "resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) On appeal, defendant contends that (1) the court erroneously placed the burden of proof on him rather than on the prosecution, (2) equal protection precluded the court from refusing to resentence him, (3) section 1170.126 establishes a presumption favoring resentencing, and (4) his constitutional rights were violated when the superior court denied him a jury trial with a beyond-a-reasonable-doubt standard of proof. We reject his contentions and affirm the superior court's order.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise specified.

## I. Background

Defendant's strike priors are two 1992 residential burglaries and a 1996 robbery. The two burglaries were committed within minutes of each other. In the first burglary, defendant stole jewelry. In the second burglary, he was interrupted by the victim. The robbery involved "entering a residence, brandishing knives and demanding money from the victim." Defendant also suffered three other felony convictions and 13 misdemeanor convictions prior to his current conviction. One of his misdemeanor convictions was a 1996 indecent exposure (§ 314, subd. (1)) conviction.[2] A number of defendant's convictions were for narcotics offenses.

The current conviction arose from an incident in September 2001. Defendant approached an intoxicated man at 2:00 a.m. and asked him for money. When the man pulled out his wallet, defendant pushed the man down, grabbed the wallet out of the man's hand, and ran away. The wallet contained $400.

Defendant was charged with robbery (§ 211, 212.5, subd. (c)) and grand theft of property over $400 (§ 484, former § 487, subd. (a)), and it was further alleged that he had suffered three prior strikes (§ 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and two prison priors (§ 667.5, subd. (b)). In 2002, he entered into a plea agreement under which he pleaded guilty to the grand theft count and admitted the strike and prison prior allegations in exchange for dismissal of the robbery count and the prior

---

[2] Defendant's section 314, subdivision (1) conviction made him ineligible for relief under Proposition 47. Grand theft of less than $950 was redefined by Proposition 47 as misdemeanor petty theft except where the defendant has a prior conviction "for an offense requiring registration pursuant to subdivision (c) of Section 290." (§ 490.2, subd. (a).) Section 290, subdivision (c) requires registration for anyone convicted of a violation of "subdivision 1 or 2 of Section 314." (§ 290, subd. (c).)

serious felony conviction allegations.[3] Defendant admitted that he had a substance abuse problem, and he told the probation officer that he "has been hearing voices that direct him to do 'bad' things . . . ." He had been deported several times. The court struck the prison priors and sentenced defendant to prison for 25 years to life.

During his 11 years in prison for his 2002 conviction, defendant has not been a model prisoner. He has repeatedly disobeyed correctional officers and refused to comply with their orders. Defendant has been repeatedly involved in fights with other prisoners throughout his time in prison. These fights occurred in 2004, 2006, 2008, 2010, twice in 2012, and four times in 2013.

In February 2013, defendant filed a petition for resentencing under section 1170.126. Defendant asked the court to summarily grant his petition on equal protection grounds. He requested a jury trial with a standard of proof beyond a reasonable doubt on the issue of whether resentencing "would pose an unreasonable risk of danger to public safety." Defendant also insisted that the "risk assessment hearing" should be "an evidentiary hearing in which the prosecution has the burden of proving that Petitioner is not entitled to relief for which he is statutorily eligible." He argued that the prosecution bore the burden of rebutting a presumption that he was entitled to resentencing. Defendant also asserted that, if he was not entitled to a jury trial and proof beyond a reasonable doubt, the standard of proof was preponderance and "the rules of evidence apply."

The defense submitted a report by Richard Subia, a former California Department of Corrections and Rehabilitation (CDCR) division director and warden. Subia had

---

[3] The abstract of judgment reflects a conviction for grand theft of property over $400 (former § 487, subd. (a)). At the original sentencing hearing, defendant's trial counsel, the prosecutor, and the court all referred to the count defendant had pleaded guilty to as "grand theft person" (former § 487, subd. (c)).

interviewed defendant and reviewed defendant's prison record, and defendant had told Subia that he was defending himself in most of the fights in which he was involved in prison. Defendant told Subia that he was targeted because of his "'R'" designation (due to his indecent exposure conviction) and "his size." Subia's opinion was that defendant did not currently pose an unreasonable risk of danger to public safety.

The defense asserted that defendant's misconduct in prison was not indicative of his risk to public safety because it was entirely the result of his need to protect himself from assaults by other inmates that arose from the "'R' suffix" designation. It argued that defendant was "not a fighter when he's out of prison." The defense also asserted that the fact that defendant had not been found to be using drugs or alcohol in prison showed that he "no longer has a drug problem." Defendant's trial counsel argued that "the Court should give weight to the incidents that are reported in the C file [(defendant's prison records)], but I also think that they should be looked at with a grain of salt . . . ."

The prosecution conceded that defendant was eligible for resentencing, but it opposed defendant's petition on the ground that he remained a public safety risk and asserted that he was not entitled to have the risk assessment hearing be a jury trial. The prosecution submitted certified copies of defendant's CDCR records, which documented defendant's behavior in prison between 2002 and 2013.

At the outset of the risk assessment hearing, the superior court denied defendant's request that it summarily grant the petition on equal protection grounds. It also denied defendant's request for a jury trial. The court ruled that the risk assessment hearing would be a "sentencing hearing," not an "evidentiary hearing," and that the rules of evidence did not apply. The court rejected the defense argument that defendant's CDCR file (his "C file") was hearsay.

Subia testified at the hearing that he had reviewed defendant's entire CDCR file and interviewed defendant. Subia explained that defendant's prior conviction for indecent exposure resulted in the CDCR's giving him "an R suffix or a suffix that

4

identifies him as some sort of sex-related offen[s]e or sex crime." In Subia's experience, other inmates recognize an inmate with an R suffix and victimize him. In addition, defendant was "small in stature" and "had some effeminate behaviors" that would also expose him to victimization by other inmates. Subia admitted that, with regard to his analysis of why defendant had been involved in so many fights in prison, "[a] lot of it is going to be speculation." Subia also conceded that defendant "does" pose a risk to public safety. "He poses a risk because he's going to be an ex-felon on the streets without a job. . . . So he poses a risk. But is that risk unreasonable? In my findings based on the whole picture I didn't think it was an unreasonable risk."

The superior court was not persuaded by Subia's testimony because it believed that Subia had "sugarcoated" his review of defendant's CDCR record. The court relied on defendant's criminal history, his commitment offense, and his conduct in prison. "He has not been a productive member of the community when he was in the community. He doesn't have any history of any type of employment or trade or anything of that sort. He had made a conscious decision to be in the United States illegally. . . . He's been deported three times, and he has apparently c[o]me back, and I have to infer . . . that he came back under circumstances which were not legal. [¶] He has 22 aliases." The court noted that defendant had done nothing positive in prison but instead had been "involved in numerous acts of misconduct in prison . . . ." "He's done nothing in prison to help himself by way of any type of rehabilitation or counseling or things of that sort that would be very productive if he were to be released into the community. [¶] So based upon my evaluation of all of this, I'm going to conclude that he has not done anything to prove to me that he would be anything other than a danger to the community if he were released, and for that reason I order the petition be denied." Defendant timely filed a notice of appeal.

5

## II. Discussion

### A. Burden of Proof

Defendant claims that the superior court erroneously placed the burden of proof on him rather than on the prosecutor. We conclude that the record demonstrates that the court properly imposed the burden of proof on the prosecutor.

At the commencement of the hearing, the superior court offered an extended monologue regarding the burden of proof. "Is there a burden of proof? If there is, what is it? What is the issue subject to the burden of proof? What criteria does the Court use to decide the issue as to whether or not he might pose a danger to the community if he were released? Is that something within the sound exercise of the Court's discretion? Is that something the People have to prove by a preponderance of the evidence? If so, what are the elements the People have to prove? A lot of that is a matter of semantics. [¶] I've taken the position in the pas[t] that the People do have a burden of proof to prove by a preponderance of the evidence some type of a contested issue of fact, but ultimately the decision the Court has to make is based upon an evaluation of the criteria and the statute, and ultimately the Court has to exercise the Court's discretion taking into account all of those factors as well as anything else that might be presented that is relevant to the issue, and ultimately then to decide whether or not if released the defendant would constitute a[n] unreasonable risk of danger to the community, and that's a discretionary call. So it's really semantics. And I'm not sure how to articulate the difference between saying the People have a burden to prove by a preponderance of the evidence the fact that the defendant is dangerous versus the decision the Court has to make based upon the Court's discretion as to whether or not he would pose unreasonable risk of danger to the community. So that's all I could say about that. [¶] I take the position ultimately it's the Court's call based upon the Court's discretion [and] that *the People have the burden to prove by a preponderance of the evidence* any type of a contested issue that might be

6

relevant as it bears upon the issue of dangerousness.  [¶]  So that's the Court's ruling if you understood it."  (Italics added.)

The court explained that the distinction it was making was that "I might make a decision and based upon findings contrary to what the People argue."  "[T]he Court in its own discretion might say I don't put a lot of weight on those reasons [relied upon by the prosecution].  I have other reasons.  I'm relying upon what I have heard in this case . . . ."  The court's position was that it was not bound by the prosecution's arguments but could base its decision on something "they haven't argued."  The court expressly acknowledged that "*[t]he People have the burden to prove by a preponderance of the evidence a contested issue of fact*."  (Italics added.)  At the conclusion of the hearing, the court pointed out that defendant had done nothing positive in prison but instead had been "involved in numerous acts of misconduct in prison."  "*He's done nothing in prison* to help himself by way of any type of rehabilitation or counseling or things of that sort that would be very productive if he were to be released into the community.  [¶]  So based upon my evaluation of all of this, I'm going to conclude that *he has not done anything* to prove to me that he would be anything other than a danger to the community if he were released, and for that reason I order the petition be denied."  (Italics added.)

Defendant insists that the superior court placed the burden of proof on him because the court said, at the very end of the hearing, "he has not done anything to prove to me that he would be anything other than a danger to the community . . . ."[4]  The

---

[4]  In a footnote to his burden of proof argument in his reply brief, defendant asserts that the superior court erred in failing "to properly consider the question of what 'unreasonably dangerous' means."  He maintains that "unreasonable risk of danger" as used in section 1170.126 was defined in Proposition 47, which took effect in early November 2014, long after the superior court denied defendant's petition.

Defendant did not raise this issue in his opening brief, which was filed prior to Proposition 47's passage.  He also did not raise this issue in his supplemental opening

(*continue*)

7

conclusion that defendant reaches is untenable.  The superior court repeatedly and expressly acknowledged that the prosecutor bore the burden of proof.  The single sentence upon which defendant relies, taken in context, does not reflect that the court placed the burden of proof on defendant.  Instead it reflects that the court found that defendant had not engaged in positive conduct in prison that demonstrated that he no longer posed the unreasonable risk of danger to public safety that he had posed before his incarceration.

Defendant claims that there was "obvious confusion" in the court's statements about the burden of proof.  We disagree.  The court acknowledged from the beginning of the hearing that the prosecution bore the burden of proof.  The statements by the court that defendant finds confusing were aimed at articulating the court's accurate distinction between the prosecution's burden of proof and the prosecution's arguments.  As the court explained, it was not bound by the specific *arguments* made by the prosecution but could rely on a different basis for its decision so long as the prosecution had presented evidence that satisfied the prosecution's burden of proof.

## B.  Equal Protection

Defendant claims that his right to equal protection precluded the superior court from even considering the risk that he posed to public safety.  He reasons that criminal defendants sentenced before the passage of Proposition 36 are similarly situated to criminal defendants sentenced after the passage of Proposition 36.  As only those

brief, which was filed after Proposition 47's passage.  And he has not sought leave to file another supplemental opening brief addressing this issue.  We decline to reach this issue in this appeal because, by raising it for the first time in his reply brief, defendant has deprived the Attorney General of the opportunity to address it.  (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)  We note that this issue is currently before the California Supreme Court in *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825.

defendants sentenced before the passage of Proposition 36 are subjected to risk assessment hearings in order to qualify for resentencing to something other than a life term, defendant claims that his right to equal protection has been violated.

Proposition 36 amended sections 667 and 1170.12 to preclude the imposition of life terms after the passage of Proposition 36 on defendants who have two prior strike convictions and are convicted of a current offense that is not serious and not violent, except under certain circumstances. (§ 1170.12, subd. (c)(2)(C).) Unless the prosecution pleads and proves one of several statutory circumstances, such a defendant is to be sentenced as if he or she had only one prior strike conviction. Proposition 36 also enacted section 1170.126, which created the resentencing petition procedures. Those procedures expressly apply to prisoners currently serving a life sentence under the former versions of sections 667 and 1170.12 and do not permit resentencing without a risk assessment hearing.

In *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), the Fifth District Court of Appeal rejected defendant's equal protection contention. The Fifth District held that there was no constitutional impediment to prospective-only application of an ameliorative, punishment-lessening statute. (*Yearwood*, at p. 178.) It held that the State had a legitimate interest in ensuring that a prisoner already sentenced to a life term would not present an unreasonable risk of danger to public safety if he or she were resentenced to a lesser term. (*Yearwood*, at pp. 178-179.)

Defendant challenges the Fifth District's analysis in *Yearwood*. He claims that strict scrutiny applies. It does not. A statutory distinction between two groups in the length of imprisonment is subjected to rational basis review, not strict scrutiny. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838; *People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).) Defendant argues that the distinction cannot survive even rational basis review. He maintains that the *distinction* does not serve any legitimate state interests. Rational basis review is very deferential. "When conducting rational basis review, we

9

must accept any gross generalizations and rough accommodations that the Legislature [or the electorate] seems to have made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends.'" (*Turnage*, at p. 77.)

Here, the voters could plausibly conclude that the differences between the two groups of defendants justified the distinction in punishment. First, when a defendant is sentenced *after* the passage of Proposition 36, the provisions of section 1170.12, subdivision (c)(2)(C), as amended by Proposition 36, provide an avenue for a prosecutor to ensure that a life term is possible by pleading and proving one of the listed statutory circumstances where one of them applies. For those defendants sentenced *before* the passage of Proposition 36, that avenue was not available. Second, since most criminal defendants resolve their cases through plea agreements, prosecutors negotiating with defendants *after* the passage of Proposition 36 could be expected to tailor plea agreements to the new scheme, something that was not possible before the passage of Proposition 36. Third, a trial court sentencing a defendant after the passage of Proposition 36 has the opportunity to base the sentence on the court's assessment of the risk of danger that the defendant poses to public safety. A trial court that sentenced a defendant before the passage of Proposition 36 would have had little incentive to do further tailoring based on a risk assessment in light of the fact that it was imposing an indeterminate life term. That trial court could expect the parole board to engage in risk assessment before releasing the defendant. We recognize that these rationales do not necessarily apply to *all* criminal defendants sentenced after the passage of Proposition 36, but the "'imperfect fit'" is just one of those "rough accommodations" that are permitted under rational basis scrutiny. (*Turnage*, *supra*, 55 Cal.4th at p. 77.) Since there were plausible reasons for the distinction drawn by the voters, we find no equal protection violation.

## C. Presumption and Sixth Amendment

Defendant contends that section 1170.126 creates a "strong presumption" that an eligible petitioner will be resentenced, and he argues that a superior court denying a petition must "state its grounds" for the denial and "articulate a rational nexus between those grounds and the ultimate question of current dangerousness."[5] (Italics omitted.) Defendant also asserts that the superior court violated his Sixth Amendment rights by denying him a jury trial and failing to utilize a standard of proof beyond a reasonable doubt.[6]

*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279 (*Kaulick*) held that there was no presumption in favor of resentencing and that the Sixth Amendment did not apply to section 1170.126 resentencing petitions. The defendant in *Kaulick* contended that the prosecution was required to prove " 'unreasonable risk of danger' " under section 1170.126, subdivision (f) beyond a reasonable doubt because this finding increased the statutory maximum for his offense. (*Kaulick*, at p. 1301.) He argued that,

---

[5] Defendant's argument does not clearly explain how he believes the superior court erred in this case with regard to the alleged presumption and the alleged need for express findings. The court plainly stated "its grounds" for the denial and explained how those grounds were linked to the risk of danger defendant posed to public safety. To the extent that defendant is arguing that the superior court failed to apply a presumption in favor of his petition, we consider his contention and find that there was no error because there is no presumption.

[6] Defendant briefly asserts that the superior court erred in admitting hearsay evidence at the risk assessment hearing because such a hearing is not a sentencing hearing and therefore "the rules of evidence must apply." The only authority he cites is Evidence Code section 300. Evidence Code section 300 provides: "Except as otherwise provided by statute, this code applies in every action before the Supreme Court or a court of appeal or superior court . . . ." (Evid. Code, § 300.) Since defendant submits no substantial argument on this issue, we consider it forfeited. We note that risk assessment hearings are plainly part of potential resentencing hearings, and courts have long been permitted to consider hearsay evidence at sentencing hearings. (*People v. Peterson* (1973) 9 Cal.3d 717, 725-726.)

11

once he was found eligible for resentencing under section 1170.126, the " ' "statutory maximum" ' " for his offense was presumptively a determinate term rather than the "Three Strikes" life term to which he had been originally sentenced.  (*Kaulick*, at pp. 1301-1302.)

The Second District Court of Appeal rejected Kaulick's contentions on the ground that the statutory maximum for his offense was always a life sentence.  In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the United States Supreme Court held that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, at p. 490, italics added.)  The Second District found that there was no presumption under section 1170.126 that an eligible petitioner was entitled to resentencing.  Instead, "unreasonable risk of danger" was a "hurdle which must be crossed" before a petitioner would become entitled to resentencing.  Thus, a petitioner is statutorily subject to his or her Three Strikes term until that hurdle is crossed, making the Three Strikes term the statutory maximum for Sixth Amendment purposes.  (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302-1303.)  Since the Sixth Amendment did not apply to the "unreasonable risk of danger" finding, the standard of proof was not beyond a reasonable doubt.  (*Kaulick*, at p. 1303.)

The Second District found support for its analysis in the United States Supreme Court's decision in *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*).  In *Dillon*, the court considered whether a two-step sentence modification procedure implicated the Sixth Amendment.  (*Dillon*, at pp. 826-829.)  The first step of the procedure was a determination of eligibility and the amount of the potential reduction.  If the prisoner was eligible, the second step involved a determination of whether a reduction should be ordered.  (*Dillon*, at pp. 826-827.)  The court held that such a procedure did not implicate the Sixth Amendment because it did not lead to a "plenary resentencing" proceeding.  (*Dillon*, at p. 827.)  Since the original sentence remained statutorily authorized, the two-

12

step procedure did not involve a change to the statutory maximum for the offense and therefore did not implicate the Sixth Amendment. (*Dillon*, at pp. 828-829.)

*Dillon* supports the Second District's conclusion in *Kaulick* that section 1170.126 does not implicate the Sixth Amendment. Defendant challenges that analysis and claims that *People v. Guinn* (1994) 28 Cal.App.4th 1130 (*Guinn*) establishes that section 1170.126 creates a presumption. The *Guinn* court held, based on a statutory construction analysis, that section 190.5 established a presumption of life without parole as the sentence for a 16- or 17-year-old minor convicted of a special circumstance murder. (*Guinn*, at pp. 1141-1142.) Section 190.5 provides that the penalty "shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life." (§ 190.5, subd. (b).) In *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*), the California Supreme Court disapproved *Guinn* and disagreed with its holding that the language of section 190.5 established a presumption. (*Gutierrez*, at p. 1371.) Instead, the court found that section 190.5's language was ambiguous and resolved the ambiguity based on the avoidance of possible unconstitutionality. (*Gutierrez*, at pp. 1372-1373.)

Defendant's *Guinn*-based claim is that the structure of section 190.5 is similar to the structure of section 1170.126, subdivision (f) and therefore a presumption should apply. However, the California Supreme Court's decision in *Gutierrez* disapproved of the *Guinn* court's reliance on the structure of section 190.5 to support a conclusion that a presumption should apply. The language and structure of section 1170.126 are not ambiguous with respect to whether a presumption should apply. The statute's heavy emphasis on the court's duty to evaluate whether "resentencing" would pose an unreasonable risk of danger to public safety necessarily implies that the court's finding on that issue is a *predicate* to the petitioner's entitlement to resentencing rather than an issue that comes up only as a possible rebuttal of a *presumption*.

13

We agree with the Second District's holding in *Kaulick* and its reliance on *Dillon*. A petition for resentencing under section 1170.126 does not implicate the Sixth Amendment because it does not establish a presumption that an eligible petitioner is entitled to resentencing. Since the original Three Strikes sentence remained the statutory maximum for defendant's offense, the Sixth Amendment did not entitle defendant to a jury trial or to application of a standard of proof beyond a reasonable doubt.

## III.  Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P. J.


_____
Márquez, J.


People v. Francisco Garcia
H040765

15

Trial Court:                              Santa Clara County Superior Court


Trial Judge:                             HonorableThomas Hastings


Attorney for Defendant and Appellant:    Keith Allen Wattley
                                         Under Appointment by the Sixth District
                                         Appellate Program


Attorneys for Plaintiff and Respondent:  Kamala D. Harris
                                         Attorney General of California

                                         Gerald A. Engler
                                         Chief Assistant Attorney General

                                         Jeffrey M. Laurence
                                         Supervising Deputy Attorney General

                                         Arthur P. Beever
                                         Deputy Attorney General

                                         Lauren Apter
                                         Deputy Attorney General

                                         Na'Shaun Neal
                                         Deputy Attorney General


People v. Francisco Garcia
H040765