[Crim. No. 22625. First Dist., Div. Four. May 26, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
STACY JAMES ARBEE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Certified for publication except as to part I.

352

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Diane M. Griffiths, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CALDECOTT, P. J.**—Stacy James Arbee appeals from a conviction of violation of Penal Code section 211.[1] Appellant was charged with and admitted a prior 1971 burglary conviction.

On March 4, 1981, appellant was sentenced to the upper term of four years for the robbery, plus one year for the prior separate prison term.

On or about April 15, 1982, the abstract of judgment was amended, increasing appellant's sentence by one year to an upper term of five years for the robbery, plus one year for the prior separate prison term.

On December 18, 1979, Otis Henley was working as cashier in a 7-Eleven Store at 2200 Bayshore, San Francisco, when a blue and white Cadillac pulled

---

[1]Unless otherwise indicated, all further references will be made to the Penal Code.

up in front. After a couple of minutes, a woman got out of the car, entered the store, and asked Michael Turner, another cashier, for a pack of cigarettes. As she was buying the cigarettes, appellant got out of the car and entered the store. Appellant walked to the counter, stood next to the woman, and raised his coat. Henley saw that appellant had his hand on a gun that was in his waistband. Appellant looked into the open cash register and said, "You don't have much but I'll take what you got." Henley told Turner to give appellant the money. Turner then gave appellant about $70 or $80. Appellant and the woman left the store together and got into the car. The woman drove and appellant sat in the passenger side. Henley wrote down the license plate number and gave it to the police. He also gave the police a description of the robbers, a white woman and a black man (appellant). Michael Turner essentially confirmed Henley's testimony.

Shortly after the robbery, San Francisco police officers took Henley to the projects on Army Street, where he saw appellant and his woman companion in another police car. Henley also saw the car that had been used in the robbery.

Officer Van Winkle, who was apparently accompanied by Officer Sweeney, went to the Army Street projects and saw the Cadillac in the parking lot. Van Winkle stopped behind the car and saw that there were two people inside. A white woman, Ms. Dominici, was on the driver's side, while a man, appellant, was on the passenger side. Van Winkle shined his spotlight into the Cadillac and saw that both had money in their hands. Appellant turned, looked at the officers, and reached under the dashboard with his right hand. Van Winkle got out of his car, drew his service revolver, and approached the Cadillac. Van Winkle ordered them out of the car, and they complied. Both still had money in their hands. There was also money dropping onto the pavement. The officers got $21 from Dominici and $59 from appellant. Before the Cadillac was towed, Van Winkle checked the car and found a homemade toy handgun under the dashboard.

Appellant acknowledged that he had the gun in his waistband when he entered the 7-Eleven, but claimed he was not aware that he had it. Appellant also claimed he did not intend to rob the store. Rather, he maintained he was joking when he looked in the cash register and said, "It's not much but I'll take it." However, he admitted that he took the money and that when he walked out of the store he thought he had just "[s]tole some money."

On cross-examination appellant said that he and Nellie Dominici were dividing up the money because Dominici felt she should get half since her car was used in the robbery.

## I

*Appellant's Prior Felony Convictions
Were Properly Admitted for Impeachment
Purposes*

. . . . . . . . . . . . . . . . . . . . . . . .*

## II

*The Case Must Be Remanded for Resentencing
re Modification of Sentence*

Appellant's alternative contention is that even if the judgment of conviction is to be sustained, the case must be remanded for resentencing for two reasons: (1) his prison term for the robbery conviction was increased without notice and hearing; (2) the trial court considered improper factors in imposing the upper term for the robbery.

The facts giving rise to the first part of appellant's claim may be summarized as follows. On March 4, 1981, appellant was sentenced on the robbery conviction to the aggravated term of four years. On the abstract of judgment the box "upper base term" was marked and a four-year sentence was entered.[2] Section 213, however, provided at all times relevant that the punishment for robbery shall be imprisonment for two, three or five years. Quite clearly, a four-year imprisonment was not an authorized term under the statute. Realizing this mistake the trial court amended the judgment on April 15, 1982, and increased the term of imprisonment for the robbery conviction to five years. However, the modification at issue took place on the court's own initiative; appellant was not notified, nor did he appear before the court. Appellant now complains that he was denied his due process right when the court modified the judgment without affording him a hearing. Appellant's point is well taken.

■ It is well settled that a criminal defendant is entitled to fundamentally fair sentencing procedures (*People* v. *Edwards* (1976) 18 Cal.3d 796, 802 [135 Cal.Rptr. 411, 557 P.2d 995]; *People* v. *Peterson* (1973) 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187]). In line with this basic premise, it has been held that when the trial court erred in imposing the term of the imprisonment, the proper procedure is to remand the case for resentencing and accord the defendant a hearing in the trial court before the erroneously imposed

---

*See footnote, *ante*, page 351.

[2]The reporter's transcript also shows that the judge sentenced appellant to the "aggravated term of four years."

sentence is to be modified. (*People* v. *Lopez* (1980) 110 Cal.App.3d 1010 [168 Cal.Rptr. 378]; *People* v. *Superior Court* (*Duran*) (1978) 84 Cal.App.3d 480 [148 Cal.Rptr. 698]; *People* v. *Superior Court* (*Gonzales*) (1978) 78 Cal.App. 3d 134 [144 Cal.Rptr. 89].) The underlying rationale to this rule is that the fundamental rights to a fair trial include the right to be present at all important stages of the proceedings and that the sentencing constitutes an essential and material phase of the criminal proceeding. (*People* v. *Laue* (1982) 130 Cal.App.3d 1055, 1061-1062 [182 Cal.Rptr. 99]; *People* v. *Sahagun* (1979) 89 Cal.App.3d 1, 25 [152 Cal.Rptr. 233].) Since the record here establishes that the modification of the sentence took place in appellant's absence, the cause must be remanded for resentencing in order to give appellant an opportunity to present evidence and legal arguments prior to entering the new, modified sentence.

■ The second part of appellant's argument is that in the case at bench, resentencing is required for the additional reason that the trial court used improper factors in imposing the aggravated term for the robbery. The claimed improper criteria referred to by the trial court were that appellant induced others (i.e., codefendant Dominici) to participate in the commission of the crime and that the crime involved threat of great bodily injury.

While the above stated factors may be properly considered by the sentencing court in imposing the aggravated term (Cal. Rules of Court, rule 421)[3] it is well settled that the reliance on said factors must be supported by the record. (*People* v. *Berry* (1981) 117 Cal.App.3d 184, 198 [172 Cal.Rptr. 756].)

In the case at bench, there is evidence only to the effect that Dominici participated both in the commission of the crime, and dividing the loot, but there is no indication whatsoever, that she was induced to do so by appellant. This factor, therefore, was improperly referred to in choosing the aggravated term. ■ Appellant's other contention that the reference to threat of great bodily harm constituted a prohibited dual use of facts in this case, is also well taken. It is established law that where, as in the present instance, a threat of violence could only be based on the defendant's use of a weapon committing the crime, it constitutes an improper dual use of facts to both enhance the punishment under section 12022.5 and to select the aggravated term under section 1170.1, subdivision (a). (*People* v. *Roberson* (1978) 81 Cal.App.3d 890, 893 [146 Cal.Rptr. 777].)

---

[3]Rule 421 provides in part that: "*Circumstances in aggravation include:* (a) Facts relating to the crime, including the fact that: (1) The crime involved great violence, great bodily harm, *threat of great bodily harm,* or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under section 12022.7. . . . (5) *The defendant induced others to participate in the commission of the crime* or occupied a position of leadership or dominance of other participants in its commission." (Italics added.)

Although the reference to the above factor was clearly erroneous, a resentencing *on this ground* is not mandated due to the circumstance that the trial court listed a number of additional reasons (i.e., premeditation, pattern of violent conduct, unsatisfactory performance on probation and parole, etc.)[4] which supply sufficient basis for imposing the upper term in this case. (*People v. Boerner* (1981) 120 Cal.App.3d 506, 509-510 [174 Cal.Rptr. 629]; *People v. Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53].)

The cause is remanded to the trial court with directions to set aside the sentence and to resentence defendant. The judgment of conviction is affirmed.

Rattigan, J., and Christian, J., concurred.

---

[4]The pertinent part of the record reads as follows: "And the reasons for the sentence choice are the following: The crime did involve the threat of great bodily harm; the Defendant was armed with an object which certainly did appear to be a gun; the Defendant induced others to participate in the commission of the crime; the planning and sophistication indicated premeditation; the Defendant had engaged in a pattern of violent conduct which indicates that he is a serious danger to society; the Defendant's prior convictions as an adult are numerous and of increasing seriousness; he has served a prior prison term and his prior performance on probation and parole was unsatisfactory that only mitigating circumstance, if there are any, is that it was not a real weapon."