Filed 9/11/13  P. v. Solis CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----

| | |
|---|---|
| THE PEOPLE, | C072557 |
| Plaintiff and Respondent, | (Super. Ct. No. CM029834) |
| v. | |
| ALEXANDER ROLANDO SOLIS, | |
| Defendant and Appellant. | |

A jury found defendant Alexander Rolando Solis guilty of three counts of forcible rape (Pen. Code, § 261, subd. (a)(2))[1] and one count of receiving stolen property (§ 496, subd. (a)).  He was sentenced to fully consecutive terms on the rape counts.  In a prior appeal to this court, we concluded the evidence did not support the trial court's implied finding that the third rape (count 5) occurred on a separate occasion.  (*People v. Solis* (2012) 206 Cal.App.4th 1210, 1212-1213.)  We remanded for resentencing.  (*Id*. at pp. 1213, 1221.)

---

[1] Undesignated statutory references are to the Penal Code.

Applying the discretionary provisions of section 667.6, subdivision (c) (hereafter section 667.6(c)), the trial court resentenced defendant on count 5 to a fully consecutive term of six years, for a total term of 20 years in state prison. Defendant again appeals contending (1) the trial court violated his right to be present, in person and by counsel, at resentencing, (2) the court failed to state proper reasons for a fully consecutive sentence, and (3) the stay-away order entered pursuant to section 1202.05 was unauthorized; the People concede the first and third points. We strike the stay-away order and remand for resentencing.

## FACTUAL BACKGROUND

During much of 2008, defendant and the victim, Jenna B., were in a dating relationship. In May of that year, defendant assisted the victim in moving out of her dormitory room at California State University, Chico. Another student, K.S., was moving out of her dorm room around the same time. At one point, K.S. left the door to her room open slightly while she took things to her car. Inside the room, she left a large black purse containing, among other things, a laptop computer. When K.S. returned to her room, the purse and its contents were gone. Sometime later, defendant gave the purse to the victim as a gift and sold the computer to his roommate for $500. At the time of the sale, defendant knew the computer had been stolen.

On October 18, 2008, defendant and the victim were together at her residence. They got into an argument about defendant eating the victim's banana bread and calling the victim "a fat Arab bitch," "slut," and "whore." The victim asked defendant to leave, and she dropped him off at his residence. Around midnight, the victim sent defendant a text message inviting him to come over and sleep with her. Defendant responded with a message that it was "up to [her]." The victim replied, "never mind."

Nevertheless, around 2:00 a.m. on October 19, defendant showed up at the victim's residence and knocked on her bedroom window. The victim woke up and let

him in. Defendant was belligerent and angry. The victim asked him to leave, but he refused.

Around this time, defendant got a telephone call from his ex-girlfriend who asked where defendant had been. Defendant responded that he had "been dating a fucking slut." The victim again asked defendant to leave but he refused. He grabbed the victim's cell phone, tried to break it, and then lay down on the floor to sleep.

The victim grabbed defendant's leg and began dragging him out of her room. Defendant started kicking the victim and she kicked him back. Defendant stood up and overturned a nightstand and chair. He threatened to knock the victim unconscious.

A week or so earlier, the victim had told defendant she might be pregnant and he appeared to be pleased at the prospect. However, the victim later learned she was not pregnant. While arguing with defendant in her room during the early morning hours of October 19, the victim told defendant that if she had been pregnant, she would have aborted the fetus. She was purposely trying to hurt him in order to induce him to leave, but he would not do so.

The victim eventually screamed for her roommate, J.D., who opened her bedroom door and found defendant and the victim standing nearby. The victim was crying and complained that defendant had her cell phone. J.D. told defendant to return the victim's phone and he complied. J.D. returned to her room and closed the door.

The victim and defendant returned to her room, where the victim attempted to call 911. Defendant grabbed her phone and took the battery out of it. The victim later went to sleep in her room and defendant slept on a couch in the common area of the residence.

The next morning, defendant knocked on the victim's door and she let him in. She returned to her bed. Defendant was still upset and she asked him to leave. He refused.

The victim asked for her phone battery and defendant told her she could have it after she gave him a ride home. She refused.

Defendant approached the victim's bed and pulled her toward the middle of it. He grabbed her foot and pushed it behind her head. He got on the bed and placed his body on top of her. The victim was wearing only panties and a T-shirt. Defendant began ripping the victim's panties and eventually pulled them down over her legs, while the victim struggled to stop him. Defendant "shoved" his finger inside the victim's vagina and said he would make it so she could not have babies. Defendant was smiling and appeared to be enjoying himself. He then removed his finger and inserted it in her anus. The victim told defendant to stop and he responded, "Shut the fuck up."

Defendant removed his finger, stood up and said, "I can put my dick in you right now." Defendant removed his clothes, got on top of the victim, held her legs back with his hands, and inserted his penis in her vagina. She begged him to stop and he again said, "Shut the fuck up." Defendant said, "How does it feel to be the first girl I raped?"

Defendant pulled his penis out of the victim's vagina and told her to turn over. She refused. He told her she had a choice between her "ass" and her mouth. She then complied. Defendant inserted his penis inside the victim again, while holding her neck with one hand and her hair with the other. Defendant then removed his penis and began rubbing it over her "butt." He again inserted his penis in her vagina. (Count 5.) Finally, defendant removed his penis, moved up the victim's back and ejaculated on the side of her face.

Defendant got up and got dressed and the victim drove him home. When she returned to her residence, the victim met J.D., who was leaving for the gym. The victim was crying and told J.D. defendant had raped her. J.D. called the police.

4

The police responded to the scene and the victim was taken to a hospital for examination. The victim had a lot of bruising on her body, mostly on her legs. She also had semen in her hair. The examination of the victim's vagina was consistent with her report of the incident.

While the police were at the scene, defendant arrived to retrieve his wallet that he had left behind. He was detained and later taken to the police station. While there, the victim placed a pretext call to defendant and repeatedly asked him why he had done "it." Defendant professed not to know what she was talking about but eventually said, "[b]ecause I'm stupid, I'm an idiot." At one point, the victim said, "I've never seen this side of you," and defendant responded that he had "never seen this side of [himself] either." Defendant further said, "I know I was wrong. I know you know that I'm not like that."

## DISCUSSION

### I. Defendant's Right to Be Present at Resentencing

Defendant contends, and the People concede, he had a right, absent a waiver, to be present in person and by counsel during the resentencing. We accept the People's concession.

### *A. Background*

At defendant's resentencing hearing on September 25, 2012, neither he nor his counsel was present, and the trial court simply stated there was "no appearance on behalf of [defendant]."[2] There is no indication in the record that defendant waived his own appearance or that of his counsel.

---

[2] A deputy district attorney and a deputy probation officer were present.

### B.  Analysis

"It is well settled that a criminal defendant is entitled to fundamentally fair sentencing procedures [citations].  In line with this basic premise, it has been held that when the trial court erred in imposing the term of the imprisonment, the proper procedure is to remand the case for resentencing and accord the defendant a hearing in the trial court before the erroneously imposed sentence is to be modified.  [Citations.]  The underlying rationale to this rule is that the fundamental rights to a fair trial include the right to be present at all important stages of the proceedings and that the sentencing constitutes an essential and material phase of the criminal proceeding.  [Citations.]  Since the record here establishes that the modification of the sentence took place in [defendant's] absence, the cause must be remanded for resentencing in order to give [defendant] an opportunity to present evidence and legal arguments prior to entering the new, modified sentence."  (*People v. Arbee* (1983) 143 Cal.App.3d 351, 355-356; see *People v. Mora* (2002) 99 Cal.App.4th 397, 398-399.)  We remand for resentencing in the presence of defendant and his counsel.

## II.  Trial Court's Statement of Reasons

Defendant contends the trial court erred by failing to state proper reasons for imposing a fully consecutive term on count 5.  We agree.

### A.  Background

At resentencing, the prosecutor asked the trial court to "impose the same sentence previously imposed" pursuant to the "discretionary" provisions of section 667.6(c), rather than the "mandatory" provisions of section 667.6, subdivision (d) (hereafter section 667.6(d)).  However, the prosecutor did not suggest any factors supporting consecutive rather than concurrent sentencing under section 1170.1 or full-term consecutive sentencing under section 667.6(c).  After hearing the prosecutor's argument, the court resentenced defendant on count 5 to the middle term of six years and ordered the

6

sentence "to run consecutive pursuant to [section] 667.6(c), which uses the word[s] 'may be imposed' as opposed to 'shall' which is in [section] 667.6(d)."

After the probation officer noted that a statement of reasons for sentencing under section 667.6(c) was required, the trial court stated, "The court obviously has read the probation report several times and has heard all of the evidence, being the trial judge. So my decision to impose the full-term consecutive under [section] 667.6(c) was rooted in part in that evidence and that report as well as . . . [t]he crimes involved the same victim on the same occasion, which is in the language of [section] 667.6(c). I think that's all I have to find."

The probation report had found three circumstances in aggravation (violent conduct indicating serious danger; great violence and threat of further bodily harm; and taking advantage of position of trust) and one factor in mitigation (insignificant record of criminal conduct), and had recommended the upper term of imprisonment. The report had suggested section 654 did not apply because "[e]ach of the acts of rape were [*sic*] separated by sufficient time for the defendant to reflect upon his actions and nevertheless he resumed sexually assaultive behavior."

### *B. Analysis*

"The court shall state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).)

Section 667.6(c) provides, in relevant part, "In lieu of the term provided in [s]ection 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in [section 667.6,] subdivision (e) if the crimes involve the same victim on the same occasion."

"[T]he decision to sentence under section 667.6[(c)] is a 'sentence choice' for which reasons must be stated." (*People v. Belmontes* (1983) 34 Cal.3d 335, 347 (*Belmontes*).) "What is required is an identification of the criteria which justify use of the

drastically harsher provisions of section 667.6[(c)]. [Citation.] The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6[(c)]." (*Belmontes*, at p. 348.)

"The ideal method of proceeding would be for the trial court first to decide generally between concurrent and consecutive terms, following the criteria listed in [California Rules of Court,] rule [4.425].[3] Once the court has decided to sentence a defendant to consecutive terms and has stated its reasons therefor, it then must decide whether the consecutive terms should be under the principal/subordinate scheme of section 1170.1 or under the full and separate term scheme of section 667.6[(c)]. If the latter is chosen, the reasons therefor should be stated for the record." (*Belmontes*, *supra*, 34 Cal.3d at p. 348*;* see rule 4.425.)

Defendant contends that the trial court's statement of reasons "does not reflect recognition that the court was choosing between the various choices available, i.e., a concurrent sentence, a one-third midterm consecutive sentence [citation], or a fully consecutive sentence."

The People counter that the trial court's statement of reasons was sufficient because it "referred to the probation report as a basis for its decision." In the People's view, the probation report "outlined that the crime involved separate acts of violence against the victim," which would be "an appropriate factor for the court to consider." (Citing rule 4.425(a)(2).)

But the probation report's focus was different: whether each act of rape was separated by sufficient time for defendant to reflect upon his actions, within the meaning of section 667.6(d). The probation officer found sufficient separation, but in the prior

---

[3] Further references to rules are to the California Rules of Court.

8

appeal this court disagreed and found insufficient separation with respect to count 5. Under these circumstances, the trial court's reference to the probation report cannot be read as a sufficient finding of separate acts of violence within the meaning of rule 4.425(a)(2). In any event, the trial court's comments do not suggest it used this sole factor to support both prongs of the decision to utilize section 667.6(c).

Because the matter must be remanded for resentencing, the trial court will have an opportunity to make its sentence choices on the record in the presence of defendant and his counsel. The People correctly note that, notwithstanding the predominance of aggravating over mitigating factors, defendant was sentenced to the middle term of imprisonment on count 5. Thus, the aggravating factors remain available to the court when it chooses consecutive or concurrent terms and when it chooses a concurrent sentence, a one-third midterm consecutive sentence, or a fully consecutive sentence.

### III. Section 1202.05 Stay-away Order

Defendant contends, and the People concede, the stay-away order entered pursuant to section 1202.05 was unauthorized because the statute relates to child victims. We accept the People's concession.

### A. Background

At the original sentencing hearing, the trial court ordered that defendant "have no visitation with his victim per [section] 1202.05." The prior appeal did not consider or set aside the order. The order now appears on the second amended abstract of judgment that was issued following the resentencing.

### B. Analysis

The parties agree that section 1202.05 "encompass[es] only child victims." (*People v. Ochoa* (2011) 192 Cal.App.4th 562, 565.) But Jenna B. was not a child. The crimes occurred in October 2008. When Jenna testified in September 2009, she was 20 years old. Thus, the statute does not apply to this case. (*Ochoa*, at p. 565.) The

9

unauthorized sentence may be corrected at any time. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)  We order the provision stricken.

## DISPOSITION

Defendant's convictions, having previously been affirmed, are not before us in this appeal.  The stay-away order is stricken.  The matter is remanded for resentencing on count 5 in accordance with this opinion.  Following resentencing, the trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


                      BUTZ              , Acting P. J.


We concur:


        MURRAY       , J.


        HOCH        , J.