Filed 4/29/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMI WAYNE MOHAMMED,<br><br>    Defendant and Appellant. | H052908<br>(Santa Clara County<br> Super. Ct. Nos. C2210384,<br> C2100250) |

In *In re G.C.* (2020) 8 Cal.5th 1119 (*G.C.*), the Supreme Court addressed the unauthorized sentence rule. The Court stated that, while this rule permits courts to correct unlawful sentences even though they were not timely challenged, "to invoke this rule the court must have jurisdiction over the judgment." (*Id*. at p. 1130.) Since the Supreme Court made this statement, the clear majority of published decisions considering the issue have held that trial courts lack inherent jurisdiction to correct unauthorized sentences. Although the issue is not entirely free from doubt—*G.C.* involved appellate rather than trial court jurisdiction—we see no good reason to depart from the literal implication of the Supreme Court's statement and join the majority view in holding that trial courts lack inherent jurisdiction to correct unauthorized sentences. Accordingly, even though the trial court's initial sentence of defendant Sami Wayne Mohammed contained unauthorized terms, we conclude that the trial court lacked jurisdiction to resentence Mohammed and increase his sentence.

Because the trial court lacked fundamental jurisdiction, we lack appellate jurisdiction as well. As it would be manifestly unjust to leave the resentencing order intact, we treat this appeal as a petition for writ of habeas corpus, grant the petition, and direct the trial court to vacate Mohammed's October 21, 2024 sentence and enter his original January 12, 2024 sentence.

## I. BACKGROUND

Because the facts underlying Mohammed's offenses are not relevant to this appeal, we omit them and only recount the relevant proceedings. (See, e.g., *People v. Mendez* (2021) 69 Cal.App.5th 347, 351, fn. 2.)

### A. Case No. C2210384

In the lead case against Mohammed, he was charged with committing 16 offenses on three separate days.

#### 1. The August 12, 2022 Offenses

Mohammed was charged with committing five felonies and two misdemeanors on August 12, 2022. The four felonies committed on that day were: (1) possession for sale of a controlled substance (fentanyl) (count 1; Health & Saf. Code, § 11351); (2) transportation, sale, or distribution of a controlled substance (fentanyl) (count 2; Health & Saf. Code, § 11352, subd. (a)); (3) possession for sale of a designated substance (Alprazolam) (count 3; Health & Saf. Code, § 11375, subd. (b)(1)); (4) transportation, sale, or distribution of a controlled substance (methamphetamine) (count 4; Health & Saf. Code, § 11379, subd. (a)), and (5) possession for sale of a controlled substance (methamphetamine) (count 5; Health & Saf. Code, § 11378)).

The two misdemeanors committed on that day were: (1) possession for sale of cannabis (count 6; Health & Saf. Code, § 11359, subd. (b)), and (2) resisting an officer (count 7; Pen. Code, § 148, subd. (a)(1)).

2

### 2. The July 28, 2022 Offenses

In the lead case, Mohammed also was charged with committing four felonies on July 28, 2022: (1) maintaining a place for unlawful activities involving controlled substances (Oxycodone) (count 8; Health & Saf. Code, § 11366); (2) sale or possession for sale of designated substances (Alprazolam) (count 9; Health & Saf. Code, § 11375, subd. (b)(1)); (3) owning, purchasing, receiving, and possession of a firearm by a felon (count 10; Pen. Code, § 29800, subd. (a)(1)); and (4) possession of ammunition by a felon (count 11; Pen. Code, § 30305, subd. (a)(1)).

### 3. The August 16, 2022 Offenses

Finally, in the lead case, Mohammed was charged with committing five misdemeanors on August 16, 2022: (1) resisting an officer (count 12; Pen. Code, § 148, subd. (a)(1)); (2) possession of a controlled substance (fentanyl) (count 13; (3) Health & Saf. Code, § 11350, subd. (a)), (3) possession of a designated substance (Alprazolam) without a prescription (count 14; Health & Saf. Code, § 11375, subd. (b)(2)); (4) possession of controlled substance paraphernalia (count 15; Health & Saf. Code, § 11364, subd. (a)); and (5) possession of a specific controlled substance (methamphetamine) (count 16; Health & Saf. Code, § 11377, subd. (a)).

The second amended complaint filed against Mohammed in the lead case also alleged various aggravating circumstances and sentencing enhancements. Most important for this appeal, the amended complaint alleged that Mohammed had prior convictions for two violent or serious felonies. (Pen. Code, § 1170.12, subd. (b)(1).)

## B. Case No. C2100250

In the second case, which was brought before the lead case, Mohammed was charged with committing five felonies on two separate days.

### 1. The January 6, 2021 Offenses

Mohammed was charged with committing three felonies on January 6, 2021: (1) possession for sale of a controlled substance (fentanyl) (count 1; Health & Saf. Code,

§ 11351); (2) owning, purchasing, receiving, and possession of a firearm by a felon (count 2; Pen. Code, § 28900, subd. (a)(1)); and (3) possession of ammunition by a felon (count 3; Pen. Code, § 30305, subd. (a)(1)).

### 2. The December 12, 2020 Offenses

In the second case, Mohammed also was charged with two committing two felonies on December 12, 2020: (1) possession for sale of a controlled substance (fentanyl) (count 4; Health & Saf. Code, § 11351); and (2) sale or possession for sale of a designated substance (Alprazolam) (count 5; Health & Saf. Code, § 11375, subd. (b)(1)).

The amended complaint in the second case also alleged one prior serious or violent felony conviction. (Pen. Code, § 1170.12, subd. (b)(1).)

## C. The Pleas

Mohammed pleaded no contest to all of the charges against him and admitted that most of the alleged sentencing enhancements and aggravating circumstances were true— including the strike priors.

## D. The Initial Sentencing

Although these pleas subjected Mohammed to more than 34 years in prison, on January 12, 2024 the trial court sentenced him to a total aggregate term of seven years, four months.

### 1. Case No. C2210384

In the lead case, the trial court sentenced Mohammed to six years in prison: the lower term of three years for the August 12, 2020 offense in count 2, doubled under the Three Strikes law. The trial court either imposed the remaining sentences concurrently— not only for additional offenses on August 12, 2022, but also for offenses on July 28, 2022—or stayed them under Penal Code section 654. The court also dismissed the enhancements pursuant to Penal Code section 1385.

4

### 2. Case No. C2100250

In the second case, the court sentenced Mohammed to one year, four months: the middle term of two years for the January 6, 2021 offense in count 2, doubled under the Three Strikes law to four years, and then reduced to one-third of that amount, running consecutively to the term in the first case. The trial court imposed concurrent sentences on the remaining counts, including those concerning the offenses committed on December 12, 2020.

Mohammed did not appeal from these sentences or the judgment against him.

### D. The CDCR Letter and Resentencing

Mohammed was initially arrested in January 2021, and he accumulated sufficient credits that, by the time that he was sentenced in January 2024 to seven years and four months in prison, he was scheduled to complete that term by October 23, 2024.

Sometime shortly before this date, the California Department of Corrections and Rehabilitation (CDCR) sent a letter, which is not included in the record on appeal, to the trial court, the defendant, and the prosecutor stating that Mohammed's sentence was unauthorized. In particular, the letter pointed out, the sentence violated the Three Strikes law by imposing concurrent sentences for the felonies that were committed on July 28, 2022 and December 12, 2020 and thus on different occasions than the other offenses.

On Friday, October 18, 2025, the trial court sent out a notice of resentencing on October 21, 2025, the following Monday. Although defense counsel protested that he had not been given sufficient time to prepare, the trial court proceeded with the hearing. Defense counsel asked the trial court to dismiss under Penal Code section 1385 the counts whose sentences the CDCR contended must be imposed concurrently. The trial court denied the request, stating that it was "not granting a *Romero* [*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497]. The *Romero* was already denied . . . ." Defense

counsel objected that "the circumstances have changed," but the trial court did not give defense counsel an opportunity to explain how.

Instead, the trial court proceeded with the resentencing. In the lead case, the trial court again sentenced Mohammed to six years on count 2. The court also imposed a consecutive sentence of one year four months on count 8, one of the offenses committed on July 28, 2022—the middle term of two years, doubled under the Three Strikes law, and then reduced to one-third as a subordinate term—in place of the concurrent sentence previously imposed. The trial court either stayed the remaining counts under Penal Code section 654 or imposed concurrent sentences on them. As a consequence, the aggregate term for the lead case increased from six years to seven years, four months.

In the second case, the trial court once again sentenced Mohammed on count 2 to one year, four months consecutive to the terms in the lead case. The court also once again imposed concurrent terms for the two other January 6, 2021 felonies. However, for count 4, the December 12, 2020 offense for possessing a controlled substance for sale, the trial court selected the middle term of three years, doubled that sentence under the Three Strikes law, and, treating it as a subordinate term, reduced the term to two years, to be served consecutively. The sentence for the final December 12, 2020 offense remained at 32 months, running concurrently. As a result, the aggregate term for the second case increased to three years, four months, and the overall aggregate increased to 10 years, eight months.

### E. The Appeal

Mohammed filed a timely notice of appeal, and the trial court granted a certificate of probable cause. After the briefing was concluded, we requested additional briefing on whether Mohammed remained in custody, and the parties informed us that he did and was still subject to habeas corpus relief.

## II. DISCUSSION

On appeal, Mohammed does not dispute that his original sentence was unauthorized; instead, he argues that the trial court lacked jurisdiction to apply the unauthorized sentence rule and resentence him. As explained below, we agree.

The Supreme Court repeatedly has said that an unauthorized sentence "is subject to correction at any time." (*People v. Landry* (2016) 2 Cal.5th 52, 127, fn. 22.) Accordingly, the Supreme Court has held that an unauthorized sentence may be corrected even when the legality of the sentence was not challenged in the trial court (*ibid*; *People v. Picklesimer* (2010) 48 Cal.4th 330, 338) or in either the trial court or the Court of Appeal (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13), and, indeed, that a trial court may correct an unauthorized sentence while the case is on appeal (*People v. Cunningham* (2001) 25 Cal.4th 926, 1044). Moreover, this rule applies where a sentence is less than authorized. Consequently, "where the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased even after execution of the sentence has begun." (*People v. Karaman* (1992) 4 Cal.4th 335, 349, fn. 15 (*Karaman*); see *People v. Serrato* (1973) 9 Cal.3d 753, 763-764, disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1.)

Mohammed's original sentence was unauthorized. Under the Three Strikes law, where a defendant has a prior serious or violent felony conviction, "[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." (Pen. Code, § 667, subd. (c)(6); see also § 667, subd. (e)(1) [requiring sentences for felony convictions to be doubled where a defendant has a prior serious or violent felony conviction].) In the lead case, Mohammed's August 12, 2022 felonies did not arise from the same set of operative facts as his July 28, 2022 felonies. And in the second case, Mohammed's January 6, 2021

felonies did not arise from the same set of operative facts as his December 12, 2020 felonies. Consequently, as the CDCR informed the trial court, under the Three Strikes law, Mohammed could not lawfully have been sentenced to concurrent terms for all his July 28, 2022 and December 12, 2020 felonies.

Before the Supreme Court's 2020 decision in *G.C.*, most trial courts would have resentenced Mohammed under the unauthorized sentence rule without considering whether they had jurisdiction to do so. However, in *G.C.*, the Supreme Court stated that the rule does not create an exception to the requirement that the trial court must have jurisdiction: "An unauthorized sentence ' "do[es] not become irremediable when a judgment of conviction becomes final, even after affirmance on appeal." ' [Citations.] But to invoke this rule the court must have jurisdiction over the judgment." (*G.C.*, *supra*, 8 Cal.5th at p 1130, italics omitted).) As the Court of Appeal decision in that case explained, and the Supreme Court agreed, the unauthorized sentence rule " 'is an exception to the *waiver doctrine* [citation], not to the *jurisdictional* requirement of a timely notice of appeal.' " (*Id*. at p. 1129.) Accordingly, *G.C.* held that the defendant in that case could not challenge a juvenile court's failure to designate charges in a dispositional order on an appeal from a later, unrelated order. (*Id*. at pp. 1122-1123.)

In light of *G.C.*'s reasoning, *People v. King* (2022) 77 Cal.App.5th 629, 633 (*King*) held that a trial court lacked jurisdiction to vacate an unauthorized sentence imposed decades earlier. *King* began by noting that "[t]he general rule is that 'once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence.' " (*Id.* at p. 634; see *Karaman*, *supra*, 4 Cal.4th at p. 344 (*Karaman*) ["Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced."].) Moreover, according to *G.C.*, "the 'unauthorized sentence' rule is an exception to the waiver doctrine, not to the requirement that a court must have jurisdiction before it may act." (*King*, at p. 635.) Accordingly, "the unauthorized

8

sentence doctrine . . . does not itself create jurisdiction for the trial court to rule on a motion challenging the legality of a sentence" (*id*. at p. 637), and "a defendant who wishes to challenge a sentence as unlawful after the defendant's conviction is final and after the defendant has begun serving the sentence must do more than simply file a motion in the trial court making an allegation that the sentence is legally infirm." (*Id*. at p. 640.)

Most subsequent published decisions have agreed with *King* and held that courts " 'do not have inherent jurisdiction to correct unauthorized sentences where judgment is final and execution of sentence has begun.' " (*People v. Garcia* (2025) 114 Cal.App.5th 139, 146 (*Garcia*); see *People v. Singleton* (2025) 113 Cal.App.5th 783, 797 (*Singleton*) ["[a]lthough Singleton's 2018 sentence was unauthorized, that does not mean the trial court in 2023 had jurisdiction to correct the sentencing error"]; *People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1123 (*Hernandez*) ["trial courts and, for that matter, appellate courts do *not* have inherent jurisdiction to correct unauthorized sentences where judgment is final and execution of sentence has begun"]; *People v. Boyd* (2024) 103 Cal.App.5th 56, 66-67 (*Boyd*) [following *King*].)

One published decision expressly disagreed with this line of cases: *People v. Codinha* (2023) 92 Cal.App.5th 976 (*Codinha*). (See also *People v. Cervantes* (2025) 115 Cal.App.5th 825, 830-831, 833 [following *Codinha* but not considering *King* and the cases supporting it].) *Codinha* held that "[a] trial court that imposes a sentence unauthorized by law retains jurisdiction (or has inherent power) to correct the sentence at any time the error comes to its attention . . . ." (*Codinha,* at p. 990.) *Codinha* did not attempt to reconcile this conclusion with *G.C.*'s statement that the unauthorized sentence rule is an exception to the waiver doctrine, not the requirement for jurisdiction. Instead, *Codinha* noted that the Supreme Court repeatedly has stated that "an unauthorized sentence is subject to correction 'at any time.' " (*Id*. at p. 988.) It also noted that the jurisdiction at issue in *G.C.* "was that of the appellate court" and concluded that "the line

9

of Supreme Court cases recognizing an unauthorized sentence is a void judgment that may be vacated or corrected whenever it is brought to the trial court's attention . . . remains valid." (*Id.* at p. 993.)

*Codinha* had a point. *G.C.* did not consider whether trial courts have inherent jurisdiction to correct unauthorized sentences, and it did not explicitly reject the prior Supreme Court decisions suggesting that trial courts may correct unauthorized sentences at any time. However, as subsequent Court of Appeal decisions have pointed out, *Codinha*'s reasoning is subject to a similar objection. "[I]n none of the case that *Codinha* cites was jurisdiction based on the unauthorized sentence doctrine." (*Boyd*, *supra*, 103 Cal.App.4th at p. 67.) Instead, the doctrine has been applied in direct appeals from judgments, habeas proceedings and other situations in which courts independently had jurisdiction to correct unauthorized sentences. (*Id*. at pp. 67-68; see *Singleton*, *supra*, 113 Cal.App.5th at p. 796; *Hernandez*, *supra*, 103 Cal.App.5th at p. 1123.) In addition, treating the unauthorized sentence rule as conferring inherent jurisdiction on trial courts to correct sentences is in tension with habeas corpus, which is expressly intended to deal with illegal sentences, because recognizing such inherent jurisdiction would allow parties to evade the procedural limitations imposed on habeas corpus petitions. (*Boyd,* at p. 68; see *Garcia*, *supra*, 114 Cal.App.5th at p. 145 [" 'habeas corpus relief would be superfluous if a freestanding trial court motion could at any time achieve the same result without the procedural limitations that habeas corpus law imposes' "]; *Hernandez*, *supra*, 103 Cal.App.5th at p. 1123 [same].)

This case highlights another problem with *Codinha*: The unfairness of using the unauthorized sentence rule to increase a defendant's sentence long after the sentence was issued and the defendant has begun serving it. In this case, after apparently accumulating a large number of good time and work credits, Mohammed was on the verge of release, but days before the release, his sentence was increased by more than three years. This is a harsh, if not cruel, outcome. Far from explaining why the unauthorized sentence rule

should be applied in this manner, *Codinha* recognized that the rule has not been applied where its application "could produce harsh outcomes" or " 'work a serious injustice.' " (*Codinha*, *supra*, 92 Cal.App.5th at p. 990, fn. 6.) However, whether or not there is inherent jurisdiction to correct unlawful sentences, unlawfully excessive sentences may be challenged on habeas corpus, and unauthorized sentences may be challenged within 120 days after sentencing (Pen. Code, § 1172.1, subd. (a)(1)) and while an appeal is pending. As a consequence, it is unclear whether recognizing inherent jurisdiction to correct unauthorized sentences would have any significant practical consequence.

In short, we see no good reason to depart from *King* and the decisions following it. We recognize that *G.C.* did not have the question of trial court jurisdiction before it and that *King* departs from previous understanding and application of the unauthorized sentence rule. However, *G.C.* states without caveat that "to invoke this rule the court must have jurisdiction over the judgment" (*G.C.*, *supra*, 8 Cal.5th at p. 1130), and there is no compelling reason to read into this statement an implicit restriction for trial court jurisdiction, especially in light of the availability of habeas corpus relief and the potential unfairness of applying the unauthorized sentence rule long after a defendant has been sentenced. However, we agree with *Codinha* that "it would be helpful [for] the lower courts for the Supreme Court definitively to decide the jurisdictional issue." (*Codinha*, *supra*, 92 Cal.App.5th at p. 993.)

Accordingly, we conclude that the trial court lacked jurisdiction to increase Mohammed's sentence. Because the trial court lacked jurisdiction, its October 12, 2024 resentencing order is not appealable. (*Singleton*, *supra*, 113 Cal.App.5th at pp. 797-798; *Hernandez*, *supra*, 103 Cal.App.5th at p. 1124; *King*, *supra*, 77 Cal.App.5th at p. 634.) However, it would be manifestly unjust to leave Mohammed with a sentence imposing three additional years without jurisdiction. Consequently, we will treat Mohammed's appeal as a petition for a writ of habeas corpus, grant the petition, and direct the trial

11

court to vacate the December 12, 2024 judgment. (*Singleton*, *supra*, 113 Cal.App.5th at pp. 799-800.)

In doing so, we do not mean to question the usefulness of the CDCR's practice of reviewing sentences and informing the trial courts where an illegal sentence has been imposed. This practice is helpful to the courts, defendants, and the People alike, and if the Department had completed its review while the trial court still had jurisdiction, the court would have been able to correct the error in Mohammed's sentence. However, in this case, the defendant did not appeal his sentence, and it took the Department more than four months to conduct its review. As a consequence, the Department's letter was not received while the trial court had jurisdiction to correct the sentence in this case. We hope that in the future the CDCR will be able to expedite its review of sentences in cases such as this one.

### III. DISPOSITION

The appeal from the October 21, 2024 resentencing order is dismissed. However, we deem the appeal from the order as a petition for a writ of habeas corpus, and we grant habeas relief. On remand, we direct the trial court to vacate the December 12, 2024 resentencing and to enter the original sentence imposed on January 12, 2024. The trial court is also directed to prepare an amended abstract of judgment and forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

_____
BROMBERG, J.

I CONCUR:

_____
GREENWOOD, P.J.

*People v. Mohammed*
H052908

Danner, J., concurring in the judgment.

I agree with the majority that the trial court's October 21, 2024 resentencing order should be vacated and Mohammed's original sentence reinstated. Because my reasoning differs from that of the majority, I respectfully concur in the judgment only.

At the time of his October 2024 resentencing hearing, the unauthorized terms of Mohammed's sentence were apparent from the face of the record. I would therefore conclude that, under current case law, the trial court had the power to correct them. (See *People v. Codinha* (2023) 92 Cal.App.5th 976, 990 (*Codinha*); see also *People v. Cervantes* (2025) 115 Cal.App.5th 825, 830–831, 833.)

Nevertheless, under the circumstances of this case, I would vacate the trial court's resentencing order as entered in violation of Mohammed's due process rights. "After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." (*Betterman v. Montana* (2016) 578 U.S. 437, 448; see also *People v. Arbee* (1983) 143 Cal.App.3d 351, 355.) A defendant has a constitutional and statutory right to be present at resentencing, a critical stage of a criminal proceeding. (See *People v. Velasco* (2023) 97 Cal.App.5th 663, 673; *People v. Nieves* (2021) 11 Cal.5th 404, 508; Pen. Code, §§ 977, subds. (b)(1) & (c)(1)(A), 1043, 1193.) Moreover, a trial court may not exercise its discretion to proceed with a sentencing hearing in a manner that deprives the defendant or his attorney of a reasonable opportunity to prepare. (See *People v. Snow* (2003) 30 Cal.4th 43, 70, 76–77 [addressing the denial of defense continuance requests]; *People v. Sakarias* (2000) 22 Cal.4th 596, 646.)

Mohammed's defense counsel received notice on Friday, October 18, 2024, that the trial court would hold a resentencing hearing for Mohammed three days later. When the court convened the hearing on October 21, 2024, Mohammed was not physically present. He instead was in prison and "on the phone, not on Teams."

Mohammed's counsel protested that Mohammed "has a right to be here in person or at least via Teams" and explained that he (counsel) had not had enough time to review the basis for the sentencing error stated in the California Department of Corrections and Rehabilitation (CDCR)'s letter. Mohammed similarly protested his absence from the hearing, stating: "I need to be there. That's why I've been doing everything I'm supposed to do to get out." Mohammed added, "My release date is in two days, two days before I get out to say my sentence is -- it doesn't make sense."

The trial court stated that it understood Mohammed's position and explained that the CDCR's letter described a failure to impose consecutive sentences as required by the Three Strikes law. The court also appeared to believe that it was legally required to correct the sentence, stating "we have to increase the sentence," and "it's an illegal sentence and, therefore, it cannot stand."

Mohammed's counsel asserted that the court "can grant a *Romero* [*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497] and strike" the prior strikes. The court rejected that option, stating it had already denied a *Romero* motion (presumably referencing its January 2024 ruling).

After the trial court noted that Mohammed had entered an "open plea" and been advised of a potential maximum sentence greater than the sentence that would result upon correction of the Three Strikes sentencing error, the court proceeded to orally pronounce new sentences in Mohammed's two cases.[1]

Because the trial court conducted a full resentencing, the court should have acceded to Mohammed's request to be personally present. (See *People v. Cutting* (2019) 42 Cal.App.5th 344, 347–350.) The court should also have provided Mohammed and his defense counsel a full and fair opportunity to prepare arguments addressing the court's

---

[1] The corresponding clerk's minute orders state, for each case, that the "[p]reviously imposed illegal sentence is now set aside."

discretionary sentencing choices, including whether to grant relief under *Romero* based on changed circumstances. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Rodriguez* (1998) 17 Cal.4th 253, 258–260; see also *People v. Penoli* (1996) 46 Cal.App.4th 298, 306.) The court's failure to afford Mohammed these fundamental protections warrants a vacatur of the resentencing order.

Mohammed is no longer in CDCR custody and is now on postrelease community supervision. I therefore conclude that it would be fundamentally unfair to increase Mohammed's original sentence, which would likely return him to custody. (See *Codinha*, *supra*, 92 Cal.App.5th at p. 990, fn. 6.) Like the majority, I agree that on remand the trial court should reinstate Mohammed's original sentence.

This case illustrates the unfortunate consequences of the ongoing uncertainty over whether a trial court has the inherent power—or even the obligation—to correct an unauthorized sentence. Our Supreme Court's decisions include seemingly conflicting statements on this point of law. (Compare *In re G.C.* (2020) 8 Cal.5th 1119, 1129–1130 [describing the unauthorized sentence rule as an exception to the waiver doctrine that cannot be invoked absent jurisdiction over the judgment] with *People v. Picklesimer* (2010) 48 Cal.4th 330, 338 [referencing an "unauthorized sentence, which the trial court would have had jurisdiction to correct at any time"]; *People v. Cunningham* (2001) 25 Cal.4th 926, 1044–1045 ["Although, as a general rule, 'an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court' [citation], it is settled that an unauthorized sentence is subject to correction despite the circumstance that an appeal is pending. Because the trial court was not authorized simply to waive sentencing on these counts, any error in failing to impose sentence in this regard would have been subject to judicial correction when it ultimately came to the attention of the trial court or this court."].)

Absent further clarification from our Supreme Court, I agree with the *Codinha* court's view that our high court's decision in *G.C.* examined a different issue and the relevant passage of the opinion was dicta that did not clearly disapprove of the high court's prior case law acknowledging the existence of jurisdiction. (See *Codinha*, *supra*, 92 Cal.App.5th at p. 993.)

California's sentencing laws are complex. Sentencing errors—even obvious ones—occasionally occur. When CDCR discovers such an error, it informs the superior court by letter that an illegal sentence has been imposed and should be corrected. And, for years, superior court judges have duly done so. (See, e.g., *People v. Mora* (2002) 99 Cal.App.4th 397, 398–399; *People v. Shabazz* (1985) 175 Cal.App.3d 468, 474.) Until our Supreme Court clarifies whether this longstanding practice is itself illegal, superior courts will continue to receive such letters without clear guidance about what to do. The transcript of Mohammed's resentencing hearing conveys the significant stress experienced by the attorneys, Mohammed, and the trial court itself about the appropriate course of action following the receipt of CDCR's letter. I urge the Supreme Court to clarify whether and under what circumstances trial courts have the authority to correct criminal sentences whose errors are apparent from the face of the record.

_____

Danner, J.

**H052908**
***People v. Mohammed***

Trial Court:                                   Santa Clara CountySuperior Court
                                               Nos.:  C2210384, C2100250

Trial Judge:                                   The Honorable Nona L. Klippen


Attorney for Defendant and Appellant           Robert L.S. Angress
Sami Wayne Mohammed:                            under appointment by the Court
                                               of Appeal for Appellant


Attorneys for Plaintiff and Respondent         Rob Bonta
The People:                                     Attorney General

                                               Charles C. Ragland,
                                               Chief Assistant Attorney General

                                               Jeffrey M. Laurence,
                                               Senior Assistant Attorney General

                                               Eric D. Share,
                                               Supervising Deputy Attorney General

                                               Shannon Chase,
                                               Deputy Attorney General


*People v. Mohammed*
H052908